The Bank of Albany having wrongfully converted the 300 shares of Michigan Southern and Northern Indiana Railroad stock, pledged to it by the plaintiff, as security for the payment of his notes, is liable to the plaintiff for the value of the stock. The only question in the case is as to the measure of damages. The plaintiff insists that he is entitled to recover the highest market value of the stock at any time intermediate the conversion and the close of the trial, the defendant insisting that the bank is only liable for the market value of the stock at the time of the conversion, and interest thereon. The referee adopted the former rule. In the case of Wilson v. Little (2 Comst., 450), which was substantially like the one under consideration, this court remarked that it was unnecessary in that case to settle the general rule of damages. It might be inferred from this language that such *Page 311 
rule had not then been settled. There were, however, at the time, several reported cases, in which the same question had been considered by the late Court for the Correction of Errors, and had been passed upon by the court in a manner to leave but little, if any, doubt as to the correctness of the rule adopted in this case. These cases uniformly hold that, although the general rule of damages in trover may be the value of the chattel at the time of its conversion, with interest, or that value when the chattel has a determinate or fixed value; yet when there is any uncertainty or fluctuation attending the value, and the chattel afterwards rises in value, the plaintiff can only be indemnified by giving him the price of it at some period subsequent to the conversion; and the necessary result of all the decisions, in my judgment, is that in such cases the plaintiff is entitled to recover the highest market value of the property at any time intermediate the conversion and the trial. In the case of Cortelyou v. Lansing (2 Caines' Cases in Error, 200), the plaintiff had pledged a depreciation note, which was in the nature of a certificate of public debt, nominally of the value of $2,629.48, for the payment of a loan of $600, a part of the loan was subsequently paid, and the pledgee, without demand of payment of the loan, or notice of sale of the certificate, sold it for $625, which was then its highest market value. In 1799, eleven years after the conversion of the certificate, the administrator of the pledgor went to the house of the pledgee to demand it, but made no demand, in consequence of the incapacity of the pledgee to attend to business. The administrator then brought his action to recover the value of the certificate, and, upon the trial, the court charged that the only rule of damages was the value of the certificate in 1799, and this ruling was approved by the Supreme Court, and the Court for the Correction of Errors. KENT, J., delivering the opinion of the court, said: "The plaintiff could only be indemnified by giving him the price of the certificate at the time he called upon the defendant to restore it; and one of the cases even carries the value down to the time of thetrial," and he cited, with approval, the decision in Shephard'sExecutor v. Johnson (2 East. R., 211), *Page 312 
that the plaintiff was entitled to recover, not merely the value of the stock which the defendant in that case had agreed to replace, on the day it was to have been replaced, but the value as it stood at the time of the trial. The case of Cortelyou v.Lansing, is not, as the defendant's counsel suggested, one of the cases which the reporter, in a note at the opening of the volume, mentions as often disputed or denied.
The case of Kortright v. The Commercial Bank of Buffalo (20 Wend., 91), was assumpsit for the value of 100 shares of the stock of the bank, transferable only on the books of the bank, the certificate of which had been assigned to the plaintiff as security for a loan of money, and which shares the bank had refused to allow to be transferred on its books, to the plaintiff, on his request. The judge at the circuit charged the jury that the measure of the damages which the plaintiff was entitled to recover, was the highest price that the stock bore at any time after the demand for permission to make the transfer on the books of the bank, before the commencement of the suit. This ruling was affirmed by the Supreme Court and by the Court for the Correction of Errors. (22 Wend., 348.) VERPLANCK, Senator, who wrote the prevailing opinion, said (page 366): "If the plaintiff was prevented from realizing his debt by the refusal of the bank to allow the transfer of the shares the bank must be liable for the highest price of the stock at any time after the demand, andbefore the trial," and he cited, with approval, the decision of the Supreme Court in West v. Wentworth (3 Cow., 82), and the adoption, by that court, of the rule laid down by Justice GROSE, in Shephard v. Johnson (2 East. R., 211), and also the opinion of the Supreme Court, in Clark v. Pinney (7 Cow., 596), to the effect that if the plaintiff, without unreasonable delay, prosecutes his suit, that the fluctuation in the price should be exclusively at the hazard of the defendant, and that the plaintiff was entitled to the highest price between the day when the delivery should have been made and the day of the trial. In the case of Kortright v. The Commercial Bank of Buffalo
(supra), the plaintiff took no exceptions to the ruling at the Circuit, and although it was *Page 313 
less favorable to him than that laid down by Senator VERPLANK, and in the cases cited by him, he could only have the benefit of the rule under which he obtained his judgment. It is to be observed that in the case of Shephard v. Johnson (supra), the value of the stock had reached its highest market price on the day of the trial, and this was evidently the reason for the remark of GROSE, J., that the plaintiff could only be indemnified by giving him the price at the time of the trial. His language is: "If the defendant neglect to replace the stock at the day appointed, and the stock afterwards rise in value, the plaintiff can only be indemnified by giving him the price at the time of the trial." Clearly, if the highest price of the stock was measure of the plaintiff's indemnity, he would be entitled to recover that price, within the decision, if the stock reached that price on any day preceding the day of trial, and had declined in market on that day. Such was the construction put upon the ruling in Shephard v. Johnson by the English courts. In Harrison v. Harrison (1 C. P., 412), it was cited, and the plaintiff was allowed to recover the value, of stock agreed to be replaced, on the day preceding the day of executing the writ of inquiry. And in Greening v. Wilkinson (1 C. P., 625), ABBOTT, Ch. J., said that the jury might give the value of the East India Company's warrants for cotton converted by the defendant, at the time of the conversion, or at any subsequent time, because the plaintiff might have had a good opportunity of selling the goods if they had not been detained." If this is the true measure of damages, in an action upon contract to replace stock, it is, for a still stronger reason, the proper measure in an action of trover, for the wrongful conversion of stock. Such action is based upon the plaintiff's title to the stock which is not transferred until his recovery of judgment, and the withholding of his stock until the day of trial is a continuing wrong, and the injury which the owner sustains on the day that his stock has reached its highest value, is the loss of such value on that day, whether it be the day of the conversion or the day of trial, or any intermediate day. And unless the plaintiff is allowed to recover the full value of his property *Page 314 
at any time after its conversion, down to the time of the trial, he may be deprived of a portion of his indemnity, as no subsequent action can be brought to recover any increased price after the commencement of the action, by the judgment in which his title is transferred.
The case of Allen v. Dygert (3 Hill, 593), affirmed in the Court for the Correction of Errors, also supports the ruling of the referee. In that case the plaintiff had pledged to the defendant 250 shares of the stock of the American Trust and Banking Company, as security for the payment of his note, and the defendant had wrongfully converted all but 72 shares of the stock prior to the 25th February, 1839. The case states that on that day the defendants had no stock standing in their names except 72 shares. The pledge was made on the 19th January, 1839, and it appeared that on the 22d and 23d days of January, 1839, the defendants sold similar stock at $96.50 per share, and on the 25th day of February, at $99.50 per share, and in March, when the plaintiff's note fell due, at $95 per share, and these prices were admitted to be the highest market prices on the several days when the sales were made. It did not appear that the stock sold belonged to the plaintiff. The 72 shares were sold in July, 1839, after the plaintiff's note fell due, at $75.25 per share, and the proceeds were credited on the plaintiff's note. The circuit judge decided that the plaintiff was entitled to recover for all the stock converted (which did not include the 72 shares) at the price for which it was selling on the 25th February, 1839. The judgment of the Supreme Court affirming this ruling, was affirmed by the Court for the Correction of Errors, by a vote of 18 to 1. The case shows that the plaintiff, whose stock is wrongfully converted, is not confined to its value at the time of its conversion, as his measure of damages, but that he may recover the highest price which his stock would have brought on any subsequent day before the commencement of the action. It is not to be supposed that the counsel or the court were not aware of the decisions in our own and in the English courts, which allowed the highest market price of the stock converted on any day intermediate *Page 315 
the conversion and the day of trial, and it is a reasonable inference that the rule established by those decisions was not alluded to, and that the plaintiff did not claim the benefit of it solely because the stock had reached its highest market value before the commencement of his action. The same measure of damages is said by this court, to be applicable in a case where a factor sells the goods of his principal below the price limited by the principal. (See the opinion of RUGGLES, J., and of BRONSON, J., in the case of Blot v. Boiceau, 3 Comst., 85-87). It was held that the factor who sells in violation of his instructions, though he obtain the market value at the time of the sale, takes upon himself the peril of a rise in the value of the goods, and in case of a rise in the market value, will be liable to pay according to such increased value at any time before an action is brought, and as BRONSON, J., remarked, "perhaps down to the trial." Assuming that in an action for the wrongful conversion of stock, the highest market value of the stock at the time of the conversion, or at any time afterwards, and before the commencement of the suit, is the measure of the plaintiff's damages, I have already suggested reasons which seem to me satisfactory, for allowing the plaintiff the benefit of the rise in the market down to the time of the trial.
I regard the decisions in the Court for the Correction of Errors as obligatory and controlling upon this court, and as settling the rule of damages, as adopted by the referee. Independent of the authorities, the rule appears to me to be reasonable and necessary to protect the rights of the owners and pledgors of stock against the tortious acts of pledgees, if the plaintiff commences his action within a reasonable time after conversion, and prosecutes it with reasonable diligence. If it is to be modified for the benefit of wrong doers, application should be made for that purpose to some other power and jurisdiction than this court. The judgment should be affirmed.
MARVIN, J., expressed no opinion; all the other judges concurring,
Judgment affirmed. *Page 316