[BROOME GENERAL TERM, July 14, 1863. *Campbell, Parker* and *Mason*, Justices.]

## MORGAN *vs.* GREGG.

Upon a sale of barley, by M. to D., for cash on delivery at the storehouse of G., it was agreed the money should be left by D. with G., to pay the price. The purchaser did not attend in person to the receiving and measuring of the grain, but had a clerk or agent there for that purpose. *Held* that a demand of the money, of such clerk or agent, was sufficient; and that it was not necessary for the vendor to go in search of the purchaser, himself, to make the demand of him.

*Held, also*, that the clear intent of the contract was that the money should be at the place of delivery; and if it was not there, the purchaser was in default, unless the vendor waived that condition. That whether he waived it or not, depended on his *intent* at the time of the delivery; and that it was a question of fact for the jury.

*Held, further*, that the fact that the grain was, as the same was delivered from day to day, at the storehouse of G., put into bins in which other barley of D. was being put, at the same time, was not such an admixture of the grain, as to make the owners thereof tenants in common; no such tenancy being contemplated, and the admixture being for no such purpose.

And that M., notwithstanding the admixture of the barley delivered by him, with barley delivered by others, did not lose his ownership, but remained owner of the quantity delivered, as though it had not been so mixed. That he had the right, as against D. and consequently as against G., his bailee, to take that amount from the common bulk; and that hence G., in denying that right, and refusing to permit him to have his own, was guilty of converting it, so as to entitle M. to his action.

The mere fact of an admixture of property does not necessarily produce a tenancy in common. Each owner may own, in severalty, his share of the goods so mingled; especially when the property is all of one kind and value.

The circumstance which gives rise to the rule that an admixture produces a tenancy in common, is the loss of *identity* of the property mixed—making it impossible for each owner to reclaim his separate property. But when the property so mixed is of the same kind, and of equal value, and the proportionate shares are known, the loss of identity does not prevent each owner from claiming his separate share; and each may take and sell, or destroy his share, without being liable to the owner of the other part.

In an action to recover damages for the unlawful conversion of property, the plaintiff is entitled to recover the highest value thereof at any time between the conversion and the day of trial.

MOTION by the defendant for a new trial, on exceptions.

*Dana, Beers & Howard,* for the plaintiff.

*J. I. Van Allen,* for the defendant.

*By the Court,* PARKER, P. J.   The plaintiff contracted with one Davis to sell him a quantity of barley, for cash on delivery, which was to be between the 1st and 15th of October, 1862. The plaintiff commenced hauling the barley to the defendant's storehouse, where it was to be delivered, for Davis, on the 1st and finished on the 9th of October, on which day, upon delivering the last load, he demanded of the person in charge of the storehouse, and who received the barley, the money for the whole amount delivered. This person said he had no money then, but would give the plaintiff the defendant's check on the bank, which the plaintiff refused to take. He was then told that he could have the money on

Saturday, (that being Thursday,) to which the plaintiff replied *that* did not answer the contract, and he would not accept it. Subsequently, on the 18th of October, the plaintiff saw Davis' agent with whom he made the bargain for the sale of the barley, and informed him he had delivered the barley, and then again demanded the money for it, and was told there was none for him. He then told the agent that he could not have the barley. On the 20th, the defendant, on behalf of Davis, tendered the money for the barley to the plaintiff, which he refused to receive. Afterwards, either on or before the 10th of November, the plaintiff tendered the defendant the amount of his charge for storage, and demanded the barley, which the defendant refused to give up, saying there was a dispute about it, and he should not deliver it until that was settled. The barley, as the same was delivered, was emptied into a bin with other barley then being delivered for Davis, with the plaintiff's knowledge, he having assisted in so delivering it. Upon the defendant's refusing to give up the barley to the plaintiff, this suit was commenced, to recover for its conversion.

In this case there was an actual delivery of the barley to the vendee, and one question is, whether the title passed to him. If the delivery was absolute and unconditional, the title did pass, and the plaintiff can not maintain the action. There is no doubt, from the evidence, that this was a sale for cash to be paid on delivery, even upon the defendant's own showing. The delivery was to be at the defendant's storehouse, and the money was to be left with the defendant to pay upon the completion of the delivery. The defendant did not attend in person to the receiving and measuring of the grain, but had a clerk or agent who attended to that business. As the defendant was not present at the storehouse when the last load was delivered, but it was received by this agent, who made up a statement of the whole amount and delivered it to the plaintiff, it was sufficient, within the meaning of the contract, that the plaintiff should demand the money of

Morgan *v.* Gregg.

the agent, and it was not necessary for him to go in search of the defendant, himself, to make the demand of him. The clear intent of the contract was, that the money should be at the place of delivery, though in the defendant's hands, and if it was not so, the purchaser was in default, unless the plaintiff waived it. Whether he did waive it, depends on his *intent* at the time of the delivery. (*Furniss* v. *Hone*, 8 *Wend.* 256. *Smith* v. *Lynes*, 1 *Seld.* 41.) Did the plaintiff intend, when he delivered the barley, to waive the right to immediate payment, and trust to the responsibility of Davis, or was the delivery only conditional ? was the question ; and that was a question of fact for the jury, and was fairly left to them.

The fact that the barley was, as delivered from day to day, put into bins in which other barley of Davis was being put at the same time, and so mingled with such other barley as to lose its identity, is used as a defense. This confusion of the plaintiff's barley with that of Davis, it is insisted, made them tenants in common of the whole, and consequently the refusal of the defendant, (who was Davis' bailor,) to deliver to the plaintiff his share on demand, did not amount to a conversion.

I am strongly inclined to think that the admixture of the grain, under the circumstances of this case, did not make the owners thereof tenants in common. The parties, manifestly, did not intend to become tenants in common. The admixture was for no such purpose. The plaintiff delivered his barley either absolutely, intending to pass the title to Davis, or conditionally, intending to retain it himself, so that no tenancy in common was contemplated. The case of *Seldon* v. *Hickock*, (2 *Caines*, 166,) is an authority showing that the mere fact of an admixture does not necessarily produce a tenancy in common, and that each owner may own in severalty his share of the goods so mingled ; especially when, as in that case, the property is all of one kind and value. The circumstance which gives rise to the rule that an admixture

Morgan *v.* Gregg.

produces a tenancy in common, is the loss of *identity* of the property mixed, making it impossible for each owner to reclaim his separate property. But where the property, so mixed, is of the same kind and of equal value, and the proportionate shares are known, the loss of identity does not prevent each owner from claiming his separate share, and each may take and sell or destroy his share, without being liable to the owner of the other part. (15 *Barb.* 334. 22 *id.* 568.) In such case the admixture does not have the effect to change the title, unless so intended, but each owner continues to own his separate share as though no admixture had been made. The identity, in such case, is not deemed destroyed, so as to produce the consequences following a mixture of ingredients incapable of separation. (*Story on Bailm.* § 40. *Wilson* v. *Nason,* 4 *Bosw.* 155.) The tenancy in common exists only when the things mixed can not be separated without inconvenience, in the proportion of the quantity, quality and value belonging to each. (4 *Bosw.* 167.) In *Ryder* v. *Hathaway,* (21 *Pick.* 306,) it is said: "The intentional and innocent intermixture of property of substantially the same quality and value, does not change the ownership; and no one has a right to take the whole, but in so doing he commits a trespass on the other owner." This, I am inclined to think, is the rule applicable to this case. The plaintiff, notwithstanding the admixture of the barley delivered by him, with barley delivered by others, did not lose his ownership, but remained owner of the 585 bushels delivered, as though it had not been so mixed. He had the right, as against Davis, and consequently as against the defendant, his bailee, to take that amount from the common bulk, as held in 15 *and* 22 *Barb.* (*supra,*) and it follows that the defendant, in denying that right and refusing to permit him to have his own, was guilty of converting it, so as to entitle him to this action. (*Bristol* v. *Burt,* 7 *John.* 254.)

There was no error in the direction of the judge to the jury, that if they found for the plaintiff, they would give

him the value of the barley on the 10th of November. If that was not the day on which the demand and refusal occurred, as I am inclined to think from the evidence it was, still the plaintiff was entitled to recover the highest value of the barley at any time between the conversion and the day of trial. (*Clark* v. *Pinney*, 7 *Cowen*, 681. *Wilson* v. *Mathews*, 24 *Barb.* 295. *Romaine* v. *Van Allen*, 26 *N. Y. Rep.* 309.)

I am of the opinion that judgment be given for the plaintiff upon the verdict, and that a new trial be denied, with costs.

Ordered accordingly.

[BROOME GENERAL TERM, May 9, 1865. *Parker, Mason* and *Balcom,* Justices.]