HENRIETTA H. WRIGHT, Respondent and Appellant, *v.* BANK OF THE METROPOLIS, Appellant and Respondent.

Where a pledgee of corporate stock, acting in good faith and under an honest mistake, converts it by an unauthorized sale thereof and refuses to replace it on demand, it is the duty of the owner to replace it himself within a reasonable time after notice of sale, and the proper measure of damages for the conversion is the highest market-price during such reasonable time. The rule in this respect is the same, whether the pledgee is a broker, who purchased and was carrying the stock on a margin for a customer, or

whether the owner had paid in full for the same and was holding it as an investment.

As to what is a reasonable time, is, where the facts are undisputed, a question of law for the court.

(Argued June 7, 1888; decided October 2, 1888.)

CROSS-APPEALS from judgment of the General Term of the Supreme Court in the fourth judicial department in favor of plaintiff, entered upon an order made January 13, 1885, which denied defendant's motion for a new trial, reversed an order granting plaintiff's motion for a new trial, and directed judgment on a verdict.

This action was brought to recover damages for the alleged unlawful conversion of certain stock.

The following are the material facts.

About the 7th of January, 1878, one Henry C. Elliott received from his correspondent in Rome, N. Y., B. Huntington Wright, his check for $2,000, payable to the order of Elliott, with a request from Wright that he, Elliott, would meet some drafts Wright would draw on him, and obtain payment from the check. He accordingly honored the drafts, and having indorsed the check procured its discount by the defendant. It was not paid when presented, and Elliott, being unable to learn the reason, went to Rome to see the drawer of the check. He then learned that the drawer had made a general assignment for the benefit of his creditors and stated his inability to do anything for Elliott. Finally, Elliott succeeded in obtaining a number of shares of stock in different railroad companies, as collateral security to the check then lying protested in the hands of the defendant. The history of the interview resulting in the procuring of the stock by Elliott, as given on the trial, is contradictory, but the verdict of the jury shows that they believed that which was given on the part of the plaintiff. From the evidence thus given it appears that the stock was in reality the stock of Benjamin H. Wright, the father of B. Huntington Wright, and that it was delivered by him to Elliott voluntarily, and for the purpose of being used as a collateral to his own note at six

months, which was to be used to take up the check, but the stock was not to be sold for six months as it was then selling in market much below what the father thought the stock was really worth. The stock was owned by Mr. Wright, as he said, for an investment, and he had no idea of selling it, but he allowed Elliott to take it because he felt sorry for his situation and wanted to help him as far as he reasonably could out of the difficulty he was in.

Elliott took the stock, went to New York and had a talk with the cashier and vice-president of the defendant, who reserved their decision as to whether they would take the note and the stock. Subsequently, and on the seventeenth of January, the cashier wrote that the stock being non-dividend paying and the note six months paper, it would be impossible to get it through the board, and he suggested it would be much better to obtain Mr. Wright's consent to sell the stock and to make his (Elliott's) account good in that way. Elliott inclosed this note to Mr. Wright in a letter addressed to " B. H. Wright," and in response, and on the twenty-second day of January, Benjamin H. Wright, the owner of the stock, wrote Mr. Rogers, the cashier of defendant, refusing to sell the stock or to permit of its being sold. Mr. Rogers had never seen either of the Messrs. Wright and did not know there were two, and subsequently, and, about the twenty-ninth of January, Elliott told him that Mr. Wright authorized the sale of the stocks, and they were immediately sold, less commissions for $2,261.50.

On the part of the plaintiff, it was claimed that Mr. Wright, the true owner of the stocks, never gave any such authority to sell them, and that he was unaware that they had been sold until May 9, 1878. February 14, 1881, the stock reached the highest price down to the day of trial, selling on that day for $18,003. This action was commenced October 7, 1879. Mr. Wright, the owner of the stocks, was about seventy-six years of age in May, 1878, and in the latter part of that year went south and returned early in the year 1879. On the 9th of May, 1878, he made a demand upon the defendant for the

stocks, and tendered to it the amount of the check and interest, being something over $2,000. The cashier stated the stocks had been sold by the authority of the owner thereof, as he supposed, given through Mr. Elliott, and refused to deliver them or their value. The original plaintiff died since the first trial of the case, and the present one was duly substituted. The court charged the jury that if they found for the plaintiff, he was entitled to recover the highest price at which the stocks could have been sold in the market, between the date of their actual conversion and a reasonable time thereafter, and that the jury should fix the reasonable time, not arbitrarily or through sympathy or prejudice, but they were to say what, under all the circumstances, would be a reasonable time within which to commence this action, and also, it may be, reasonable diligence in prosecuting it, because if the action were commenced, in fact, within a reasonable time after the conversion of the stock and had been prosecuted with reasonable diligence since, then the plaintiff was entitled to recover the highest market-price that the stock reached between the date of the conversion and the time of the trial, less the amount of the check and interest, and with interest on the balance. This charge was duly excepted to. The jury found a verdict for $3,391.25. There is no evidence which shows when the stock reached that value. Upon the rendition of the verdict both parties moved to set it aside, the plaintiff on the ground that he was entitled, under the charge, to the highest value of the stock down to the trial, and the defendant on the ground that the damages were excessive and contrary to evidence. The court granted the motion of the plaintiff and set the verdict aside on the ground stated, and denied the motion of the defendant. The defendant appealed to the General Term from both of such orders. That court reversed the order setting aside the verdict, and ordered judgment thereon, and affirmed the order made on defendant's motion, refusing to set aside the verdict.

*W. E. Scripture* for plaintiff. The plaintiff is entitled to recover the highest market-value that the stock reached between

the day of conversion and the day of trial.  (*Romaine* v. *Van Allen*, 26 N. Y. 309, 315; *Markham* v. *Jaudon*, 41 id. 235, 257; *Matthews* v. *Coe*, 49 id. 57; *Baker* v. *Drake*, 53 id. 211; 66 id. 518; 69 id. 450; *Colt* v. *Owens*, 90 id. 369.)

*John Delahunty* and *Joseph H. Choate* for defendant. Punitive or exemplary damages are allowed only in cases where there has been an intentional violation of another's rights.  They are never allowed in cases where the defendant has only done what he honestly believed he had a right to do. (*Hamilton* v. *Third Ave. R. R. Co.*, 53 N. Y. 25; *West* v. *Wentworth*, 3 Cow. 82; *Romaine* v. *Van Allen*, 26 N. Y. 309; *Scott* v. *Rogers*, 31 id. 676; *Brass* v. *Worth*, 40 Barb. 648; *Cannon* v. *Folsom*, 2 Iowa, 201; *Page* v. *Fowler*, 39 Cal. 412; *Hamilton* v. *McPherson*, 28 N. Y. 72; *Miller* v. *Mariners' Church*, 7 Greenl. 51; *Shannon* v. *Comstock*, 21 Wend. 461; *Hickscher* v. *McFrea*, 24 id. 309; *Clark* v. *Marsipia*, 1 Denio, 317; *Spencer* v. *Halstead*, Id. 606; *Toker* v. *Damon*, 17 Pick. 284; *Dillon* v. *Armstrong*, 43 N. Y. 231; *Worth* v. *Edmonds*, 52 Barb. 40; *White* v. *Fuller*, 67 id. 267; *Baker* v. *Drake*, 53 N. Y. 211; *Matthews* v. *Coe*, 49 id. 57; *Suydam* v. *Jenkins*, 3 Sand. 614; *Tyng* v. *Commercial Warehouse Co.*, 58 N. Y. 308; *M. & T. Bank* v. *F. & M. Nat. Bank*, 60 id. 40; *Wheelan* v. *Lynch*, Id. 469.)  Neither exemplary damages, nor such as are remote and consequential, are recoverable in an action founded upon the breach of an executory contract; the remedy of the plaintiff, in all such cases, is limited to a just compensation for his actual loss.  (*Wyman* v. *Am. Powder Works*, 8 Cush. 168; *Hussey* v. *Manf. & Mer. Bank*, 10 Pick. 415; *Robinson* v. *Barrow*, 48 Me. 186; *Hoyden* v. *Bartlett*, 35 id. 203; *Smith* v. *Dunlap*, 12 Ill. 184; *Keaggy* v. *Hite*, 12 id. 99; *Otter* v. *Williams*, 21 id. 118; *Cushman* v. *Hayes*, 46 id. 145; *Bates* v. *Stansell*, 19 Mich. 91; *Freeman* v. *Luckett*, 2 J. J. Marsh. 390; *Vance* v. *Tonrue*, 13 La. 229; *Lynes* v. *Olwer*, 13 Mich. 9; *Whitfield* v. *Whitfield*, 40 Miss. 353; *Omara* v. *North Am. Mining Co.*, 2

Nev. 112; *Carlyou* v. *Lannan*, 4 id. 156; *Boylan* v. *Huguet*, 4 id. 456; *Hurd* v. *Hubbell*, 26 Conn. 389; *Walker* v. *Boreland*, 21 Mo. 289; *Dorsett* v. *Frith*, 25 Ga. 537; *Page* v. *Fowler*, 39 Cal. 412; *Pinkerton* v. *Man. & Law. R. R. Co.*, 42 N. H. 424; *Moody* v. *Canet*, 14 Fla. 50; *Frothingham* v. *Morse*, 45 N. H. 545; *Sturges* v. *Keith*, 57 Ill. 451.) The plaintiff, if the jury find on the other disputed questions in her favor, would be entitled to recover only the market-price of the stocks upon a purchase made by her assignors within a reasonable time after knowledge of the conversion, less the amount of the protested check, with interest. What would be a reasonable time to make such purchase is a question of law, and not one of fact, for the jury. (*Colt* v. *Owens*, 90 N. Y. 368; *Hedges* v. *H. R. R. R. Co.*, 49 id. 223; *Carroll* v. *Upton*, 3 Comst. 272; *Porter* v. *Blood*, 5 Pick. 56; *Halbrook* v. *Burt*, 22 id. 555; *Kimball* v. *Ins. Co.*, 8 Gray, 34; *Kotte* v. *Buffalo S. L. R. R. Co.*, 34 N. Y. 548, 553; 11 Johns. 187; 3 Comst. 272; 3 Seld. 266; 27 Barb. 221; 2 Duer, 259; 1 Wend. 457; *Davis* v. *Gwyne*, 57 N. Y. 676.)

PECKHAM, J. This case comes before us in a somewhat peculiar condition. As both parties appeal from the same judgment, which is for a sum of money only, it would seem as if there ought not to be much difficulty in obtaining its reversal. It is obvious, however, that a mere reversal would do neither party any good, as the case would then go down for a new trial, leaving the important legal question in the case not passed upon by this court. This, we think, would be an injustice to both sides. The case is here, and the main question is in regard to the rule of damages, and, we think, it ought to be decided. By this charge the case was left to the jury to give the highest price the stock could have been sold for intermediate its conversion and the day of trial, provided the jury thought, under all the circumstances, that the action had been commenced within a reasonable time after the conversion, and had been prosecuted with reasonable diligence since. Authority for this rule is claimed under *Romaine*

v. *Van Allen* (26 N. Y. 309), and several other cases of a somewhat similar nature referred to therein. *Markham* v. *Jaudon* (41 N. Y. 235) followed the rule laid down in *Romaine* v. *Van Allen*. In these two cases a recovery was permitted which gave the plaintiff the highest price of the stock between the conversion and the trial. In the *Markham Case* the plaintiff had not paid for the stocks, but was having them carried for him by his broker (the defendant) on a margin. Yet this fact was not regarded as making any difference in the rule of damages, and the case was thought to be controlled by that of *Romaine.*

In this state of the rule the case of *Matthews* v. *Coe* (49 N. Y. 57–62) came before the court. The precise question was not therein involved, but the court (per CHURCH, Ch. J.) took occasion to intimate that it was not entirely satisfied with the correctness of the rule in any case not special and exceptional in its circumstances, and the learned judge added that they did not regard the rule as so firmly settled by authority as to be beyond the reach of review whenever an occasion should render it necessary. One phase of the question again came before this court, and in proper form, in *Baker* v. *Drake* (53 N. Y. 211), where the plaintiff had paid but a small percentage on the value of the stock, and his broker, the defendant, was carrying the same on a margin, and the plaintiff had recovered in the court below, as damages for the unauthorized sale of the stock, the highest price between the time of conversion and the time of trial. The rule was applied to substantially the same facts as in *Markham* v. *Jaudon* (*supra*), and that case was cited as authority for the decision of the court below. This court, however, reversed the judgment and disapproved the rule of damages which had been applied. The opinion was written by that very able and learned Judge, RAPALLO, and all the cases pertaining to the subject were reviewed by him, and in such a masterly manner as to leave nothing further for us to do in that direction. We think the reasoning of the opinion calls for a reversal of this judgment.

In the course of his opinion the judge said that the rule of

damages, as laid down by the trial court, following the case of *Markham* v. *Jaudon,* had "been recognized and adopted in several late adjudications in this state in actions for the conversion of property of fluctuating value; but its soundness, as a general rule applicable to all cases of conversion of such property, has been seriously questioned and is denied in various adjudications in this and other states." The rule was not regarded as one of those settled principles in the law, as to the measure of damages, to which the maxim *stare decisis* should be applied. The principle upon which the case was decided rested upon the fundamental theory that in all cases of the conversion of property (except where punitive damages are allowed), the rule to be adopted should be one which affords the plaintiff a just indemnity for the loss he has sustained by the sale of the stock; and in cases where a loss of profits is claimed, it should be, when awarded at all, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of, and which a proper degree of prudence on the part of the complainant would not have averted.

The rule thus stated, in the language of Judge RAPALLO, he proceeds to apply to the facts of the case before him. In stating what, in his view, would be a proper indemnity to the injured party in such a case, the learned judge commenced his statement with the fact that the plaintiff did not hold the stocks for investment, and he added, that if "they had been paid for and owned by the plaintiff, different considerations would arise, but it must be borne in mind that we are treating of a speculation carried on with the capital of the broker and not of the customer. If the broker has violated his contract, or disposed of the stock without authority, the customer is entitled to recover such damages as would naturally be sustained in restoring himself to the position of which he has been deprived. He certainly has no right to be placed in a better position than he would be in if the wrong had not been done."

The whole reasoning of the opinion is still based upon the

question as to what damages would naturally be sustained by the plaintiff in restoring himself to the position he had been in; or, in other words, in repurchasing the stock. It is assumed in the opinion that the sale by the defendants was illegal and a conversion, and that plaintiff had a right to disaffirm the sale and to require defendants to replace the stock. If they failed, then the learned judge says the plaintiff's remedy was to do it himself, and to charge the defendants with the loss necessarily sustained by him in doing so. Is not this equally the duty of a plaintiff who owns the whole of the stock that has been wrongfully sold? I mean, of course, to exclude all question of punitive damages resting on bad faith. In the one case the plaintiff has a valid contract with the broker to hold the stock, and the broker violates it and sells the stock. The duty of the broker is to replace it at once upon the demand of the plaintiff. In case he does not it is the duty of the plaintiff to repurchase it. Why should not the same duty rest upon a plaintiff who has paid in full for his stock and has deposited it with another conditionally? The broker who purchased it on a margin for the plaintiff violates his contract and his duty when he wrongfully sells the stock, just as much as if the whole purchase-price had been paid by the plaintiff. His duty is in each case to replace the stock upon demand, and in case he fails so to do, then the duty of the plaintiff springs up, and he should repurchase the stock himself. This duty, it seems to me, is founded upon the general duty which one owes to another, who converts his property under an honest mistake, to render the resulting damage as light as it may be reasonably within his power to do. It is well said by EARL, J., in *Parsons* v. *Sutton* (66 N. Y. 92), that "the party who suffers from a breach of contract must so act as to make his damages as small as he reasonably can. He must not by inattention, want of care or inexcusable negligence permit his damage to grow and then charge it all to the other party. The law gives him all the redress he should have by indemnifying him for the damage which he necessarily sustains." See, also, *Dillon* v. *Anderson* (43 N. Y. 231); *Hogle* v. *New York Central & Hud-*

*son River Railroad Company* (28 Hun, 363), the latter case being an action of tort. In such a case as this, whether the action sounds in tort or is based altogether upon contract, the rule of damages is the same. (Per DENIO, Ch. J., in *Scott* v. *Rogers*, 31 N. Y. 676 ; and per RAPALLO, J., in *Baker* v. *Drake*, *supra*.) The rule of damages as laid down in *Baker* v. *Drake*, in cases where the stock was purchased by the broker on a margin for plaintiff, and where the matter was evidently a speculation, has been affirmed in the later cases in this court. (*Gruman* v. *Smith*, 81 N. Y. 25 ; *Colt* v. *Owens*, 90 N. Y. 368.) In both cases the duty of the plaintiff to repurchase the stock within a reasonable time is stated. I think the duty exists in the same degree where the plaintiff had paid in full for the stock and was the absolute owner thereof. In *Baker* v. *Drake*, the learned judge did not assume to declare that in a case where the pledgor was the absolute owner of the stock and it was wrongfully sold, the measure of damages must be as laid down in the *Romaine Case*. He was endeavoring to distinguish the cases, and to show that there was a difference between the case of one who is engaged in a speculation with what is substantially the money of another, and the case of an absolute owner of stock which is sold wrongfully by the pledgee. And he said that at least the former ought not to be allowed such a rule of damages. It can be seen, however, that the judge was not satisfied with the rule in the *Romaine Case*, even as applied to the facts therein stated. In his opinion he makes use of this language: "In a case where the loss of probable profits is claimed as an element of damage, *if it be ever allowable to mulct a defendant for such a conjectural loss*, its amount is a question of fact, and a finding in regard to it should be based upon some evidence." In order to refuse to. the plaintiff in that case, however, the damages claimed, it was necessary to overrule the *Markham Case*, which was done.

Now, so far as the duty to repurchase the stock is concerned, I see no difference in the two cases. There is no material distinction in the fact of ownership of the whole stock which should

place the plaintiff outside of any liability to repurchase after notice of sale, and should render the defendant continuously liable for any higher price to which the stock might rise after conversion and before trial. As the same liability on the part of defendant exists in each case to replace the stock, and as he is technically a wrong-doer in both cases, but in one no more than in the other, he should respond in the same measure of damages in both cases, and that measure is the amount which, in the language of RAPALLO, J., is the natural, reasonable and proximate result of the wrongful act complained of, and which a proper degree of prudence on the part of the plaintiff would not have averted. The loss of a sale of the stock at the highest price down to trial, would seem to be a less natural and proximate result of the wrongful act of the defendant in selling it when plaintiff had the stock for an investment, than when he had it for a speculation, for the intent to keep it as an investment is at war with any intent to sell it at any price, even the highest. But in both cases the qualification attaches that the loss shall only be such as a proper degree of prudence on the part of the complainant would not have averted, and a proper degree of prudence on the part of the complainant consists in repurchasing the stock after notice of its sale, and within a reasonable time. If the stock then sells for less than the defendant sold it for, of course the complainant has not been injured, for the difference in the two prices inures to his benefit. If it sells for more, that difference the defendant should pay.

It is said that, as he had already paid for the stock once, it is unreasonable to ask the owner to go in the market and repurchase it. I do not see the force of this distinction. In the case of the stock held on margin, the plaintiff has paid his margin once to the broker, and so it may be said that it is unreasonable to ask him to pay it over again in the purchase of the stock. Neither statement, it seems to me, furnishes any reason for holding a defendant liable to the rule of damages stated in this record. The defendant's liability rests upon the ground that he has converted, though in good faith and under

a mistake as to his rights, the property of the plaintiff. The defendant is, therefore, liable to respond in damages for the value. But the duty of the plaintiff to make the damages as light as he reasonably may, rests upon him in both cases, for there is no more legal wrong done by the defendant in selling the stock, which the plaintiff has fully paid for, than there is in selling the stock which he has agreed to hold on a margin, and which agreement he violates by selling it. All that can be said is that there is a difference in amount, as in one case the plaintiff's margin has gone, while in the other the whole price of the stock has been sacrificed. But there is no such difference in the legal nature of the two transactions as should leave the duty resting upon the plaintiff in the one case to repurchase the stock, and in the other case should wholly absolve him therefrom. A rule which requires a repurchase of the stock in a reasonable time, does away with all questions as to the highest price before the commencement of the suit, or whether it was commenced in a reasonable time or prosecuted with reasonable diligence, and leaves out of view any question as to the presumption that plaintiff would have kept his stock down to the time when it sold at the highest mark before the day of trial, and would then have sold it, even though he had owned it for an investment. Such a presumption is not only of quite a shadowy and vague nature, but is also, as it would seem, entirely inconsistent with the fact that he was holding the stock as an investment. If kept for an investment, it would have been kept down to the day of trial, and the price at that time there might be some degree of propriety in awarding, under certain circumstances, if it were higher than when it was converted. But to presume, in favor of an investor, that he would have held his stock during all of a period of possible depression, and would have realized upon it when it reached the highest figure, is to indulge in a presumption which, it is safe to say, would not be based on fact once in a hundred times. To formulate a legal liability based upon such presumption, I think is wholly unjust in such a case as the present. Justice and fair dealing are both more

apt to be promoted by adhering to the rule which imposes the duty upon the plaintiff to make his loss as light as possible, notwithstanding the unauthorized act of the defendant, assuming, of course, in all cases that there was good faith on the part of the defendant.

It is the natural and proximate loss which the plaintiff is to be indemnified for, and that cannot be said to extend to the highest price before trial, but only to the highest price reached within a reasonable time after the plaintiff has learned of the conversion of his stock within which he could go in the market and repurchase it. What is a reasonable time when the facts are undisputed and different inferences cannot reasonably be drawn from the same facts, is a question of law. *Colt* v. *Owens*, 90 N. Y. 368; *Hedges* v. *H. R. Railroad Co.*, 49 id. 223.)

We think that beyond all controversy in this case, and taking all the facts into consideration, this reasonable time had expired by July 1, 1878, following the ninth of May of the same year. The highest price which the stock reached during that period was $2,795, and as it is not certain on what day the plaintiff might have purchased, we think it fair to give him the highest price it reached in that time. From this should be deducted the amount of the check and interest to the day when the stock was sold, as then it is presumed the defendant paid the check with the proceeds of the sale.

In all this discussion as to the rule of damages, we have assumed that the defendant acted in good faith, in an honest mistake as to its right to sell the stock, and that it was not a case for punitive damages. A careful perusal of the whole case leads us to this conclusion. It is not needful to state the evidence, but we cannot see any question in the case showing bad faith, or indeed any reason for its existence. The fact is uncontradicted that the defendant sold the stock upon what its officers supposed was the authority of the owner thereof given to them by Elliott.

The opinion delivered by the learned judge at General

SICKELS—VOL. LXV.   32

Term, while agreeing with the principle of this opinion as to the rule of damages in this case, sustained the verdict of the jury upon the theory that if the plaintiff had gone into the market within a reasonable time and purchased an equivalent of the stocks converted, he would have paid the price which he recovered by the verdict. This left the jury the right to fix what was a reasonable time and then assumed there was evidence to support the verdict. In truth there was no evidence which showed the value of the stock to have been anything like the amount of the verdict, for the evidence showed it was generally very much less, and sometimes very much more. But fixing what is a reasonable time ourselves, it is seen that the stock within that time was never of any such value.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except RUGER, Ch. J.; ANDREWS and DANFORTH, JJ., dissenting.

Judgment reversed.