<hr/>

### KILPATRICK v. DEAN et al.[1]

*(Common Pleas of New York City and County, General Term. April 1, 1889.)*

1. ASSIGNMENT FOR THE BENEFIT OF CREDITORS—VESTING OF TITLE IN ASSIGNEE.
   The filing of his official bond by an assignee for the benefit of creditors is not a condition precedent to the vesting in him of the title to the assigned property.

2. TROVER AND CONVERSION—DAMAGES—HARMLESS ERROR.
   In an action for conversion of property, the defendant cannot object to an instruction that the measure of damages is the value of the property at the time of the conversion, where the rule contended for by the defendant is less favorable to him.

3. TRIAL—OBJECTIONS TO EVIDENCE.
   Where in such action a witness to whom an order for the delivery of the property in question had been given was permitted to testify without objection that he had received an assignment of the property, it was not error for the court afterwards to refuse to strike out the testimony on the ground that it stated merely a legal conclusion.

Appeal from city court, general term.

Action by Walter F. Kilpatrick, as general assignee of Peter Haulenbeck, against R. J. Dean & Co., to recover for the conversion of 184 bags of coffee. The defendants were warehousemen, and Henry A. Morris, the general owner of the coffee, had stored it with them, and received certain advances upon it. Afterwards Morris gave to Haulenbeck an order for the delivery of the coffee, subject to said advances. The conversion was predicated on the sale by the defendants of the coffee to satisfy claims owing to them by Morris, without notice to him or to Haulenbeck. Judgment was given for plaintiff, and defendants appeal.

Argued before LARREMORE, C. J., and DALY and VAN HOESEN, JJ.

*Blandy & Hatch,* for appellants. *Kelly & MacRae,* for respondent.

LARREMORE, C. J. After a careful consideration of the argument of the learned counsel for appellants, including both his original brief and the supplemental brief filed on the appeal to this court, I have reached the conclusion

<hr/>

[1] Affirming 3 N. Y. Supp. 60.

that the judgment should be affirmed.  The opinion of McADAM, C. J., at the general term of the city court (3 N. Y. Supp. 60,) is so full and satisfactory that it is unnecessary for us to discuss the main question of the conversion, and many other points involved.  The following suggestions are to be taken in connection with and as supplementary to said opinion, in the reasoning of which we concur.

*First.* It was argued most strenuously that, as plaintiff is assignee of an insolvent estate under the general assignment act, and as it did not appear affirmatively in plaintiff's case that he had filed an official bond, therefore no cause of action had been established, and the complaint should have been dismissed.  This contention involves the erroneous assumption that the execution of a bond is a condition precedent to the vesting of the title to the assigned estate.  But, as matter of fact, the instrument itself conveys the assignor's property to the assignee, and the law as to giving of security is simply that the assignee shall not act in the execution of his trust until after the bond is filed.  *Brennan* v. *Willson*, 71 N. Y. 502.  Plaintiff's title to the claim here in suit is therefore indisputable, and the only question that defendants could have raised would have been that of his legal capacity to sue.  This point was not taken in the pleadings, and the Code is explicit that, unless taken by demurrer or answer, such an objection shall be deemed to have been waived.  Sections 488, 498, 499.

*Second.* The learned counsel further claims that the complaint should have been dismissed because there was not sufficient evidence, outside of the statement of a conclusion of law by plaintiff's witness Haulenbeck, to establish an assignment of the coffee from Morris to plaintiff's assignor.  The testimony in question, in which Haulenbeck gives not strictly facts, was admitted without objection.  It was not error for the trial judge to refuse to strike it out upon motion made at a subsequent stage of the case.  Such a motion is always discretionary, and, moreover, it is quite probable that the justice who presided was influenced in his decision not to strike the evidence out by an opinion very readily to be formed from the record that the counsel's opposition to this evidence was an after-thought, and that when it was allowed to be given said counsel had no intention of disputing the existence and validity of the alleged assignment.  The statements in question, and the delivery of the warehouse order, were quite sufficient to make out a *prima facie* assignment.  The legal effect of testimony of this character is very much the same as that of stipulations in open court as to evidence.  Every practitioner is familiar with the custom of entering a memorandum in the minutes that certain facts or certain conclusions of law shall, for the purposes of the trial, be considered established.  No one would question the binding force of such a stipulation, or would claim that the matters so stipulated to be true were not adequately authenticated to support the verdict which follows.  In the case at bar the witness testified that he received an assignment of certain coffee.  This is undoubtedly a legal conclusion, and would have been incompetent.  But, as it came into the case without the objection of the learned counsel for defendants, it has the same force as if both counsel had stipulated that it should be taken for granted that Morris has assigned the coffee to Haulenbeck.  Under this view it would follow that the assignment was properly made out, even if the delivery of the warehouse order did not *ipso facto* operate as a transfer, and that the motion to dismiss the complaint was properly denied.

*Third.* On the question of the measure of damages I am at a loss to comprehend just what the practical contention of appellants' counsel is.  The group of cases culminating in *Wright* v. *Bank*, 110 N. Y. 237, 18 N. E. Rep. 79, all consider the measure of damages upon conversion of negotiable commercial securities, such as railroad stocks.  Practices which have recently sprung up assimilate traffic in grain, oil, coffee, and some other commodities

very closely to speculation in intangible securities. But it is not essential to determine here whether the rule laid down in *Wright* v. *Bank* must be adopted in cases of speculative holdings of commodities, or whether the rule to be adhered to in all cases was the one administered on the trial, to-wit, that the measure of damages is the value of the property at the time of its conversion. Even if, as the learned counsel for appellants claims, the rule of *Wright* v. *Bank* is the proper one, the trial judge in his charge advanced a proposition of law which was more favorable to the defendants. Chief Justice McADAM says this in his opinion, and we are simply amplifying his statement on the subject. The principle laid down in *Wright* v. *Bank* is that in cases of the conversion of securities the measure of damages shall be the value of the property within a reasonable time after such conversion. All of Judge PECK-HAM's reasoning was directed to the abrogation of the former rule that in such cases the plaintiff could recover the highest value of the stock down to the day of the trial. If the law established by the cited case had been announced to the jury in the case at bar, they might have been enabled to give plaintiff greater damages. Plaintiff would still have recovered the value on the day of the conversion if that was the highest market price reached within a reasonable time, but would have been entitled to a higher rate if coffee sold for more money during such period. It must be apparent that from the defendants' stand-point the most advantageous, possible theory of damages was embodied in the judge's charge, and defendants' counsel is, in effect, arguing that the judgment must be reversed because the court erred in defendants' favor.

*Fourth.* It is unnecessary to say anything here about the disposition on the trial of the Haulenbeck note of $963.11, the Butters note for $121.26, and the Malcolm & Flagner note for $100.98, further than that we think, for the reasons given in Chief Justice McADAM's opinion, the trial court properly refused to say as matter of law that they were valid counter-claims, and properly submitted the questions as to whether or not they were to be allowed as counter-claims to the jury. The judgment appealed from should be affirmed, with costs.