(118 App. Div. 389)

BURNHAM v. LAWSON et al.

(Supreme Court, Appellate Division, First Department. March 15, 1907.)

1. BROKERS—CONVERSION—RATIFICATION.

Plaintiff opened an account with defendant stockbrokers, and arranged to have his transactions cared for by them during his absence on a vacation, and left with them sufficient collateral to protect his account. They made an unauthorized sale of certain of the securities, and immediately sent notice to him in the country, not stating the price, but indicating that there had been a flurry in the market. that there had been failures, and that the sale was made "to protect your account, as this stock moves very fast." Plaintiff remained silent where he was for a week or 10 days, then started home, stopping a day and a half at an intermediate point, where he received notice of sale of other securities, and the next day went home, and repudiated the transactions. Held, that there was not a ratification of the first sale by his silence in the meantime; he not having known of the price at which the sale was made.

2. DAMAGES—CONVERSION OF STOCK.

Where defendant brokers made an unauthorized sale of plaintiff's stock, the measure of damages is the difference between the sale price and the highest price reached, not between the time of the sale and a reasonable time after hearing of the conversion. but between the time he learned thereof, and a reasonable time thereafter.

Ingraham and Houghton, JJ., dissenting in part.

Appeal from Trial Term, New York County.

Action by Charles Burnham against William S. Lawson and others. From a judgment on a verdict for plaintiff, and from an order denying a motion for a new trial, defendants appeal. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, HOUGHTON, and LAMBERT, JJ.

J. W. Gerard, for appellant.
H. Aaron, for respondent.

LAMBERT, J. The defendants are stockbrokers, and the plaintiff opened an account with them in or before the year 1902. In 1903 the plaintiff called upon the defendants, and had an interview with Mr. Sullivan, a member of the firm, in reference to his stock transactions. There is a dispute as to what occurred, but the jury might properly find that the plaintiff arranged to have his transactions cared for during his absence on a vacation, and that he left with the defendants sufficient collateral to protect his account. The defendants sold out some of the plaintiff's holdings, and this action is brought to recover damages.

The principal question raised by this appeal is whether the sale having been made, the plaintiff ratified the same. The leading transaction occurred on the 6th day of August, 1903. On that day there was a sharp decline in the market value of securities. The plaintiff

owed the defendants on account $40,485.60, and the market value of his securities on that day reached $40,962. Under these circumstances the defendants sold 200 shares of Union Pacific stock at 69½, and gave immediate notice of such sale to the plaintiff. He received the letter of notification on the following day at Prout's Neck, Maine. The letter did not, however, state the price for which the stock was sold. It indicated that there had been something of a flurry in the market; that there had been failures, and that the sale was made "to protect your account, as this stock moves very fast." It contained an expression of the opinion that the Union Pacific stock would go 5 to 10 points lower; but nothing definite about the actual transaction, except that the stock in question had been sold. The plaintiff concededly did not act upon this letter. He remained silent at Prout's Neck for a week or 10 days, and then went to New London, where he remained a day and a half. While at this latter point, the plaintiff received notice of the sale on the 8th day of August of the other securities which had been left in the hands of the defendants. The next morning he started for New York, arriving there on or about the 17th of August. He immediately complained to the defendants of his treatment, and this action was brought.

There is no serious question, but that the plaintiff repudiated the transactions of the 8th of August, or that he is entitled to recover damages for the same. It is insisted, however, by the appellants that as to the 200 shares of Union Pacific stock, there was a ratification of the sale, evidenced by the fact that the plaintiff did not repudiate the same immediately upon being notified. We are of the opinion, however, that this contention is not sound. Whatever may be the rule in cases where the rights of third persons are involved, as between the immediate parties to the transaction, ratification implies a conscious and intended approval of the act done. It rests upon the actual and existing purpose to make such approval; and, to meet this requirement, it must be made with full knowledge of all the facts. Glenn v. Garth, 133 N. Y. 18, 35, 30 N. E. 649, 31 N. E. 344. In this case the plaintiff did not know the price which had been realized on the sale. It was known by the defendants that he was in the state of Maine on a vacation, where he was not likely to be in communication with the stock market. If his version of the affair is accepted, as it has been by the jury, the plaintiff had arranged with his brokers for the protection of his holdings, and he had a right to assume that the transaction was within the spirit of his agreement with the defendants and for his benefit. It was not until the 17th or 18th day of August that the plaintiff actually knew all of the facts in reference to the sale of his Union Pacific stock occurring on the 6th day of that month. It is not seriously contended that he did not, on that date, repudiate the transaction, as well as those of the 8th of August. We are of the opinion that these facts do not show an intention on the part of the plaintiff, with a full knowledge of all the facts, to ratify the wrongful sale of his stock on the 6th of August. Before one is called upon to ratify any unauthorized transaction which has been undertaken for him, he is entitled to have all the facts put before him, and then he is entitled to a reasonable time in which to act before he can be com-

pelled to take his position with regard to the transaction. Hopkins v. Clark, 7 App. Div. 207, 213, 40 N. Y. Supp. 130, and authority there cited. The jury have found that the plaintiff did not, under the circumstances, ratify the act of the defendants in reference to the Union Pacific stock, and, were it not for an error in the charge to the jury, fixing an erroneous measure of damages, the judgment would be sustained.

The learned court in its charge to the jury, and by its refusal to charge as requested, fixed the measure of damages as the "difference between the prices at which the defendants sold the stock, and the highest market price reached down to a reasonable time after the plaintiff received notice of the sale, together with interest on the difference." That is, the plaintiff was permitted to pick out the highest market price of those securities, at any time between the day of sale, and a reasonable length of time after receiving notice; whereas, the proper rule, as stated by the court in Wright v. Bank of the Metropolis, 110 N. Y. 237, 249, 18 N. E. 79, 1 L. R. A. 289, 6 Am. St. Rep. 356, is that "the plaintiff is entitled to the highest price reached within a reasonable time after the plaintiff has learned of the conversion of the stock within which he could go into the market and repurchase it." What is a reasonable time when the facts are undisputed and different inferences cannot reasonably be drawn from the same facts, is a question of law. Wright v. Bank of Metropolis, supra. We are of opinion that the court did not err in holding that the 31st day of August, in the same year, was not an unreasonable extension of time within which the highest price might be ascertained. It appears from the record that, under this charge, the jury must have fixed upon some prices which prevailed intermediate the sale and the notice to the plaintiff of such sale. These prices are in excess of any shown to have been offered after such notice, and this was clearly prejudicial to the appellants.

For this reason, the judgment appealed from should be reversed.

The judgment and order appealed from are reversed, and a new trial granted, with costs to the appellant to abide the event.

PATTERSON, P. J., and LAUGHLIN, J., concur.

INGRAHAM, J. I concur in the reversal of this judgment, but I think that the plaintiff was estopped from questioning the sale of the Union Pacific stock, of which he received notice on the day after it was sold. The defendants, in making the sale of this stock, assumed to act as the agent of the plaintiff, and made the sale for his benefit and on his account. Of that the plaintiff received notice with the reasons which induced the defendants to make the sale. It seems to me that if the plaintiff wished to disaffirm this sale, he was bound to at once notify the defendants. He could not stand by without objection and speculate upon the future course of the market, and hold the defendants liable for a breach of their duty if the market went up, but ratify the sale and accept the transaction if the market went down. The price at which the stock was sold was, in this view, entirely immaterial. He had notice that the stock had been sold; that the de-

fendants had assumed to act in selling it as his brokers and for his account; and that the sale would be an advantage to him, as, in their opinion he would be able to subsequently repurchase the stock at a lower price.

All of the late cases that have discussed the relation between a broker and his customer, in relation to carrying stock on margin, treat an unauthorized sale of the stock as a violation of a contract between the customer and his broker, to which the usual rules applicable to the relation of principal and agent apply. Thus, in Baker v. Drake, 53 N. Y. 211, 13 Am. Rep. 507, Judge Rapelle says:

"If, upon becoming informed of the sale, he desired further to prosecute the adventure and take the chances of a future market, he had the right to disaffirm the sale and require the defendants to replace the stock. If they failed or refused to do this, his remedy was to do it himself and charge them with the loss reasonably sustained in doing so."

And in the case of Wright v. Bank of Metropolis, 110 N. Y. 237, 18 N. E. 79, 1 L. R. A. 289, 6 Am. St. Rep. 356, Judge Peckham in speaking of the case of Baker v. Drake, says:

"The whole reasoning of the opinion is still based upon the question as to what damages would naturally be sustained by the plaintiff in restoring himself to the position he had been in; or, in other words, in repurchasing the stock. It is assumed in the opinion that the sale by the defendant was illegal and a conversion, and that the plaintiff had a right to disaffirm the sale and to require the defendants to replace the stock,"

—and the court then applied the rule laid down in Parsons v. Sutton, 66 N. Y. 92, which states the rights of the parties arising from a breach of a contract, that:

"The party who suffers from a breach of a contract must so act as to make his damages as small as he reasonably can. He must not by inattention, want of care, or inexcusable negligence, permit his damage to grow, and then charge it all to the other party."

The time within which a party must disaffirm an unauthorized sale of the stock, or in which he must repurchase in case the agent or broker refuses to repurchase the stock after the sale is disaffirmed, is not the same. The plaintiff was informed that there had been great uncertainty as to the future of the market; that there had been failures among dealers and other failures were expected, and that in the opinion of the writer of the letter this stock would go lower. He was then placed in a situation in which he was bound to act promptly if he wished to disaffirm the sale, and he could not lie by and wait for future developments to see whether or not the sale would be advantageous or disadvantageous to him. He received this notice on the 7th of August. He was in reach of the defendants' office by telegraph or letter, and a communication would have been received by them within 24 hours from the time it was sent; but the first time that he communicated in any way with them was on the 18th of August, more than 10 days after he received the notice of sale. It is not disputed but that each day between August 6th and August 12th, inclusive, Union Pacific stock sold lower than the price at which the defendants sold it, and that the highest price at which it sold during those days was 72. On the 18th day of August the stock had advanced to up-

wards of 78, and it was this price that it would appear that the jury allowed the plaintiff as the damages caused to him by the sale of the stock; but I think he was entirely too late in disaffirming the transaction, and that his delay in disaffirmance was an implied ratification, and that he cannot now recover for any damages for the sale of this Union Pacific stock.

HOUGHTON, J., concurs.