JAY A. HUBBELL v. GRAHAM F. BLANDY, EXECUTOR OF THE LAST WILL AND TESTAMENT OF GRAHAM BLANDY, DECEASED.

*Bailment—Liabilty of bailee—Conversion—Measure of damages —Error without prejudice—Revival of suit by executor.*

1. A stock-broker who receives a certificate of stock from the owner for safe-keeping, which he fails to deliver on demand, having delivered it to the officers of the corporation without the consent of the owner, who have canceled it, is guilty of its conversion, regardless of his intention in the premises.

2. The court instructed the jury that the measure of damages would be the value of the stock when the owner received notice of its conversion, with interest, and all dividends paid on the stock from the time of its delivery to the broker up to the date of said notice, with interest from the dates when they were payable, which instruction was excepted to by the defendant, who contended that plaintiff could only recover the highest price reached by the stock within a reasonable time after plaintiff learned of its conversion, and within which he could go into the market and repurchase it. And it is held that, as the application of the latter rule would not decrease the judgment under the established facts, no error is seen in the case, and the judgment is affirmed.

3. Where a non-resident defendant dies after the entry of judgment, and the suit is revived in the name of an executor, who is appointed on the probate of defendant's will in this State, and removes the judgment by writ of error to this Court for

87 MICH.—14.

review, an objection that the executor has no standing in. Court, it not appearing that the testator had any property in this State, is untenable, the question being ruled by *In re McCarty*, 81 Mich. 460.

Error to Houghton. (Steere, J.) Argued July 2, 1891. Decided July 28, 1891.

Trover. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Stone & Gray*, for appellant.

*T. L. Chadbourne*, for plaintiff.

LONG, J. This is an action of trover for the unlawful conversion by the defendant, Graham Blandy, of 1,000 shares of the capital stock of the Colorado Central Consolidated Mining Company, a corporation organized and existing under the laws of the state of New York.

The defendant was a stock-broker doing business in the city of New York. The plaintiff is a citizen of Michigan, and had had business dealings with the defendant prior to 1882. It is conceded that in the fall of 1882 the plaintiff placed the certificate of stock in question in charge of the defendant for safe-keeping. In the fall of 1886 the plaintiff asked the defendant for a list of his stocks then in the possession of defendant. The defendant sent plaintiff a list of the stocks in his hands, and included the stock in question. On the next day the defendant discovered that he did not have this stock, but that it had been delivered to the officers of the company in the fall of 1884.[1] On the trial it was a disputed question whether the stock had been so delivered by the defendant upon an order of the plaintiff

---

[1] The certificate was canceled by the corporation, and a new one issued to another party.

or not, the defendant and his clerk testifying that the stock had been so delivered upon the plaintiff's written order, while the plaintiff testified that he had never given such an order, and, if the stock had been so delivered, the order was a forgery. The defendant testified that he took the stock at plaintiff's request, and for his accommodation only.

It was contended by defendant's counsel on the trial that, if defendant was a bailee without reward, he was not responsible for the loss of the stock intrusted to him, unless he was guilty of gross negligence, and that this gross negligence must be equivalent to fraud in order to make him liable in an action; and that a promise by a bailee, without reward, to keep safely, does not render him liable for injury or losses occasioned by the acts of wrong-doers. The circuit judge refused to submit that question to the jury, but submitted to the jury one question only, and that was,—

"Did or did not the plaintiff authorize Mr. Blandy to deliver the stock in question to the officials of the mining company, where Mr. Blandy testified that he did deliver it?"

The jury, having found against the defendant upon this question, returned a verdict in favor of plaintiff for $4,426.25. Judgment upon this verdict being entered, defendant's executor brings error.

It appears in the case that the defendant died in the city of Brooklyn, N. Y., four days after the entry of this judgment, leaving a last will and testament. His will having been admitted to probate in this State on March 24, 1891, and letters testamentary having been issued to his executor, Graham F. Blandy, the death of the defendant was suggested of record, and the cause was revived in the name of such executor. The writ of error was sued out by the executor. Plaintiff contends

that the executor has no standing in this Court, as it does not appear that Graham Blandy left any property within this State to be administered. This point is not well taken. We think this question was ruled by *In re McCarty*, 81 Mich. 460, and *In re Nugent's Estate*, 77 Id. 500.

But two questions are raised by this record upon the part of the defendant, and under which his counsel contend the case should be reversed, namely:

1. Did the court err in not submitting to the jury the question whether or not the defendant was a gratuitous bailee, and, if so, as to the extent of his liability and degree of care required as such?
2. Did the court err in his instruction to the jury as to the proper measure or rule of damages?

It is contended by defendant's counsel upon the first proposition that, Graham Blandy having testified that he received and held the stock solely for the accommodation of the plaintiff, the burden of proof was upon the plaintiff to show that the loss was owing to the bailee's negligence; that, in order to recover, it devolved upon the plaintiff, not only to show a deposit of the stock with defendant, and that defendant did not restore it, but, further, to show that the non-restoration was produced by the lack of due diligence on the part of defendant; and that the evidence in the case did not warrant a recovery by the plaintiff. The proposition of defendant's counsel is that the defendant was a mere gratuitous bailee, and not responsible for losses occasioned by the acts of wrong-doers, and not even for a theft not caused by his own neglect. Counsel cite numerous authorities upon this proposition.[1]

---

[1] Counsel cited *Scott v. Bank*, 72 Penn. St. 471; *Comp v. Bank*, 94 Id. 409; *Whitney v. Lee*, 8 Metc. 91; *Davis v. Gray*, 141 Mass. 531; *Jones v. Morgan*, 90 N. Y. 4; *Green v. Birchard*, 27 Ind. 483; *Schermer v. Neurath*, 54 Md. 491; *Dougherty v. Posegate*, 3 Iowa, 88; 2 Amer. & Eng. Cyc. Law, 52.

This is an action of trover for the conversion of the property by the bailee. The conversion shown was a transfer and delivery over by Graham Blandy of these shares of stock to the company issuing them, without the consent or authority of the plaintiff. It appears that, at the time the stock was delivered over to the company, it was of great value, and the plaintiff, by reason of its wrongful delivery to the company, was put in a position where he was unable to recover the stock, and upon the part of Graham Blandy it amounted to a conversion. Demand was made upon him for it, and he wholly failed to replace it. It was held in *Dearbourn v. Bank*, 58 Me. 273, where the bank was intrusted with bonds for safe-keeping, which, when called for, were found to be gone, and the evidence tended to show that they had been lost, stolen, or misdelivered, that trover would not lie, since it could only be by a misdelivery that the bank, under the circumstances, could be held liable, and the misdelivery was not established. In the present case we think the court very properly left the only question to the jury which could arise; that is, " Did Mr. Hubbell authorize the delivery?" The finding of the jury that Mr. Blandy delivered the stock without Mr. Hubbell's assent amounts to a finding in fact that he was guilty of the conversion charged.

The cases cited by defendant's counsel, we think, have no application to the present case, under the finding of the jury that Mr. Blandy converted the property, as it would make no difference whether the conversion was to his own use or to the use of another, inasmuch as the plaintiff was thereby deprived of the property. In such cases the bailee is liable for the value of the property converted, and it makes no difference how good his intentions are, or how careful he may have been in the premises. In *Hawkins v. Hoffman*, 6 Hill, 586, it was said

that trover may be maintained against a common carrier where the goods intrusted to him are lost by his act, though without any wrongful intent; as where he delivers them to the wrong person by mistake, or under a forged order. It is said by Mr. Justice COOLEY in his work on Torts, page 632, that—

"Liability as gratuitous bailee only arises when the trust has once been assumed, * * * but any dealing with the subject of the bailment in a manner not warranted by the understanding is, in law, wrongful. Therefore, if one having undertaken to carry and deliver money for another shall hand it over to a third person to be carried, from whom it is stolen, or by whom it is lost, the loss must fall upon the bailee, who alone was trusted by the owner."

Defendant's counsel also cite in support of their proposition *Beller v. Schultz*, 44 Mich. 529. In that case it appeared that Schultz went to work for Beller, and took two flags with him, a large one and a small one. He lent the large one to Beller, and helped to put it upon Beller's building. He went away without taking the small one, and permitted the other to remain flying where he had assisted in placing it. Subsequently a hail-storm injured it. He sent for both flags, and received the small one, but failed to receive the other. He sued in *assumpsit* for its value. It was held by this Court that there was no cause of action. It was said in that case that the bailment was not shown to have been abused; that there was no proof that Beller failed in his duty.

"If there was any want of such care to guard the flag against injury from storms as the law would consider due, which is not probable, it was for Schultz to give evidence to prove it. He gave none whatever, and it is not to be presumed that Beller was in fault."

In the present case it appears that the property was actually converted, either to the defendant's use or the

use of the company, and that without the consent of the plaintiff.

The second question raised relates to the charge of the court upon the measure of damages, as follows:

"In case you decide in favor of the plaintiff, he is entitled to recover such an amount of damages as would legally compensate him for the loss he has sustained by reason of not receiving back his stock,—the loss he has suffered in consequence of Mr. Blandy's default in preserving it for him, and returning it to him; and that would be the price and value of the stock as it was at the time Mr. Hubbell received information from Mr. Blandy of the loss of the stock; and, in addition to that, he would be entitled to recover all dividends paid upon the stock from the time it came into his hands—that is, in Mr. Blandy's hands—up to the day when information of its loss was given to Mr. Hubbell, with interest at the rate of 6 per cent. per annum, to be computed on the value of the stock from the date when its loss was made known to Mr. Hubbell, and also to be computed on the dividends at the same rate from the dates when they were respectively payable."

It is contended upon the part of the defendant that this is not the rule by which plaintiff's damages are to be measured; that the conversion occurred, if at all, in the state of New York, and that whatever would be a good defense to the action if brought where the wrong was committed must be a good defense everywhere; that this rule extends to the measure of damages in actions *ex delicto*, for wrong or injury to personal property; and that there is no testimony in this case tending to show that defendant acted in bad faith. It is therefore contended that the true measure of damages was what it would have cost the plaintiff to replace the stock within a reasonable time after knowledge came to him of its alleged conversion by the defendant, and that the testimony shows that the value of the stock depreciated from $3 per share—which was the market value at the time

the knowledge came to the plaintiff of its alleged conversion, and the one allowed by the jury—to $2.60 per share within 60 days from that date, and before the commencement of this suit. August 22, 1887, it had gone down to $2.20 per share. Counsel cite, in support of their proposition as to the measure of damages, the case of *Wright v. Bank,* 110 N. Y. 237 (18 N. E. Rep. 79). That was an action for the conversion of stock owned by the plaintiff. It appeared that the defendant acted in good faith in disposing of it, and the rule was there laid down by the court as follows:

"Justice and fair dealing are both more apt to be promoted by adhering to the rule which imposes the duty upon the plaintiff to make his loss as light as possible, notwithstanding the unauthorized act of the defendant, assuming, of course, in all cases that there was good faith on the part of the appellant. It is the natural and proximate loss which the plaintiff is to be indemnified for, and that cannot be said to extend to the highest price before trial, but only to the highest price reached within a reasonable time after the plaintiff has learned of the conversion of his stock, within which he could go in the market and repurchase it. What is a reasonable time, when the facts are undisputed, and different inferences cannot reasonably be drawn from the same facts, is a question of law."

This is, in substance, the language of the court in that case, which is quoted by defendant's counsel in their brief; but the court went further in the case, and said:

"We think that, beyond all controversy, in this case, and taking all the facts into consideration, this reasonable time had expired July 1, 1878, following the 9th day of May of the same year. The highest price which the stock reached during that period was $2,795, and, as it is not certain on what day the plaintiff might have purchased, we think it fair to give him the highest price it reached in that time."

Applying that rule to the present case, we think the result reached would not give the plaintiff a less amount

of damages than was allowed him under the rule adopted by the court in its charge to the jury. The conversion took place in the fall of 1884, but the plaintiff was not notified of it until the fall of 1886. At that time the stock was of the value of $3 per share; and if we adopt the rule contended for by defendant's counsel, under the ruling of the court in *Wright v. Bank, supra,* at $3 per share, with interest upon this amount at 6 per cent. upon dividends to which the plaintiff would be entitled, the amount would be no less than the amount of the judgment actually rendered in the case. We therefore see no error in the case, and the judgment must be affirmed, with costs.

The other Justices concurred.