## WALLACE *v.* H. W. NOBLE & CO.

1. Evidence—Damages—Admissions—Stock and Stockholders—
Wrongful Sale.

   In an action for damages for the unauthorized sale of shares
   of stock, testimony as to a conversation between plaintiff
   and an officer of defendant corporation, in which plaintiff
   admitted that shortly before the trial he could have re-
   purchased the stock, and that the difference between the
   price accounted for and what it would have cost him to
   repurchase was only $600, was admissible.

2. Same—Compromise—Admissions.

   The exclusion of said testimony cannot be justified upon
   the theory that it was an effort to compromise, since, if
   made, it was an admission of a material fact.

3. Same—Damages.

   *Held,* error to refuse to allow defendant to show what it
   would have cost plaintiff to repurchase the stock within a
   reasonable time after he had knowledge of its wrongful
   sale.

4. Estoppel—Ratification—Question for Jury.

   In an action for damages for the unauthorized sale of shares
   of stock, where defendant claimed that plaintiff was
   estopped by a letter which he had written ratifying the
   sale, which plaintiff denied, claiming defendant had not
   fully and correctly informed him as to the facts at the
   time the letter was written, the question was for the jury.

5. Damages—Stock and Stockholders—Wrongful Sale.

   Plaintiff is entitled to recover upon the basis of the highest
   market price reached by stock between the time of its
   wrongful sale and the expiration of a reasonable time to
   enable him to purchase other shares on the market.

6. Same—Miscarriage of Justice—Statutes.

   If plaintiff, by the expenditure of $600 or $800, within a
   reasonable time could have placed himself *in statu quo,*
   a judgment of $3,500 cannot be sustained under section
   28, chap. 50, Act No. 314, Pub. Acts 1915 (3 Comp. Laws
   1915, § 13763), upon the theory that there was no injustice.

See note in 50 L. R. A. (N. S.) 1046.

Error to Wayne; Brown, J., presiding. Submitted June 6, 1918. (Docket No. 43.) Decided September 27, 1918. Rehearing denied January 31, 1919.

Assumpsit by Newell B. Wallace against H. W. Noble & Company for breach of a contract for the sale of corporate stock. Judgment for plaintiff. Defendant brings error. Reversed.

*Charles F. Delbridge,* for appellant.

*Lucking, Helfman; Lucking & Hanlon,* for appellee.

MOORE, J. This action was brought to recover damages for an alleged breach of contract in the unlawful sale in April, 1915, by defendant of 20 shares of stock of Ford Motor Company, Ltd., of Canada. From a judgment in the sum of $3,500 in favor of the plaintiff the case is brought here by writ of error. The trial judge in overruling a motion for a new trial made so complete a statement of the issues involved that we quote therefrom as follows:

"This was an action of assumpsit brought in the summer of 1915 by Newell B. Wallace against H. W. Noble & Company, a corporation, for damages for the breach of a certain written contract entered into between che parties on or about October 7, 1913. This contract provided among other things substantially that the parties to the contract should purchase 25 shares of the stock of the Ford Motor Company of Canada, Limited, at $550.00 per share, making a total purchase price of $13,750.00. It was provided that the stock should be carried until by mutual agreement the parties disposed of it. The contract was signed by both parties and pursuant thereto the 25 shares of stock were purchased in two lots, one of 5 shares and one of 20 shares. It appeared, however, that the defendant in the case actually paid $10,890.00 for the 20-share lot instead of $11,000.00, there being a commission of $110.00 charged in this transaction by the defendant of which fact plaintiff apparently had no

knowledge until the trial of this case. The 25 shares of Ford stock, together with 20 shares of the stock of the Union Trust Company, then owned by plaintiff, were deposited as security with the Wayne County & Home Savings Bank in Detroit and a loan was there obtained of sufficient money to pay the original purchase price of the 25 shares of Ford stock.

"It is undisputed that on or about August 14, 1914, by the mutual consent of both plaintiff and defendant, 5 shares of the original purchase were sold and the proceeds duly accounted for by defendant. It is also undisputed that at one time the bank required a payment of $500 upon the loan in addition to the collateral owned by plaintiff which it held and that this sum of $500 was advanced as provided in said contract by the plaintiff to the defendant, and paid to the bank as requested.

"The remaining 20 shares of Ford stock were carried in the joint account until on or about April 6, 1915, when defendant, without the knowledge or consent of plaintiff, and in violation of said contract, and without giving any notice to plaintiff, sold all the remaining 20 shares of Ford stock. Defendant accounted to the plaintiff on the sale of these remaining 20 shares at the rate of $685.00 per share, in addition to a dividend of $30.00 per share which had been declared by the officials of the Ford Company on or about April 5, 1915. It is not exactly clear at what price these shares were actually sold, although the defendant produced evidence to show that part were sold at $675.00 per share and the balance at $700 per share. This unauthorized sale of 20 shares is the one of which plaintiff complains and for which he claims damages.

"It is undisputed that plaintiff, at the time of the alleged unauthorized sale and for sometime prior thereto, had been out of the State, he then being a salesman for D. M. Ferry & Company and traveling in various parts of the United States. Between the time of the sale, namely, April 6, 1915, and April 30, 1915, Mr. Albert Nebe, one of the defendant's salesmen, who had knowledge of the transaction whereby the Ford stock above mentioned was held by the parties on joint account, wrote several letters to plaintiff,

which letters in general spoke highly of the stock of
the Ford Motor Company of Canada and led plaintiff
to believe that the stock would continue to increase
in price. Finally, about the end of April, plaintiff
wrote a letter in which he commented upon the
profits that would be made by the parties by hold-
ing the Ford Company stock until a higher price
was obtained. In reply to this letter, Mr. H. W.
Noble, the chief stockholder in the defendant com-
pany, wrote the plaintiff under date of April 30, 1915,
and informed him that the stock had been sold and
offering certain explanations why the stock had been
sold. On or about May 4, 1915, plaintiff wrote a let-
ter apologizing for the tone of his previous letter and
apparently ratifying the alleged unauthorized sale.
It is undisputed that plaintiff was not notified of the
sale of the stock prior to the letter of Mr. H. W. Noble
of April 30, 1915.

"Defendant claimed that plaintiff was estopped to
claim any damages by reason of the letter of May 4th
above mentioned, and plaintiff claimed that when he
wrote this letter he did not have such a full, correct,
and complete statement of the facts as it was the duty
of defendant to furnish, and therefore the alleged
ratification and estoppel was of no validity."

We shall not attempt to discuss all of the appellant's
197 assignments of error which he groups in his brief
under three heads, as follows:

*First,* those pertaining to the court's failure to di-
rect a verdict; *second,* those pertaining to various
rulings throughout the taking of the testimony, tend-
ing to prejudice the defendant's case before the jury;
and, *third,* those pertaining to the court's rule of dam-
ages, especially as to reasonable time.

As to the first of these groups we shall content our-
selves with saying that we think there was a case to
be submitted to the jury under proper instructions.

Was there error in the rulings in relation to the
admission of testimony? Defendant sought to show
a conversation Mr. Noble had with the plaintiff in
which plaintiff admitted that shortly before commenc-

ing suit on July 31, 1915, he could have repurchased the stock and that the difference between the $685 per share accounted for to him by defendant, and what it would have cost plaintiff to have repurchased after he had knowledge that the stock had been sold without his consent, was only $600. The exclusion of this testimony is sought to be justified upon the theory that it was an effort to compromise; we think, if made, that it was more than an effort to compromise; it is an admission of a material fact and the testimony should have been allowed.

We also think it was error to refuse to allow the defendant to show what it would have cost the plaintiff to repurchase the stock within a reasonable time after he had knowledge of its wrongful sale. We do not think it could be said as a matter of law that plaintiff was estopped by his letter of May 4, 1915, and that for that reason a verdict should have been directed. See *Blount* v. *Eames*, 150 Mich. 35; *Coffey* v. *McGahey*, 181 Mich. 225.

The appellant offered 49 written requests to charge, among them was one reading:

"Plaintiff, when he learned that his interest in the stock had been sold without his consent, if you find such sale was contrary to the terms of the agreement, was entitled at that time, to demand and receive from the defendant ten shares of stock in the Ford Motor Company, Ltd., of Canada, together with a sum equal to the dividends and interest thereon, declared subsequent to such wrongful sale, and in lieu thereof, the plaintiff was entitled to demand and receive from the defendant such a sum of money as would enable the plaintiff to go into the open market and buy ten shares of such stock within a reasonable time thereafter."

The court charged the jury upon that subject as follows:

"The measure of damages in stock transactions of this kind is the difference between the amount re-

ceived and the highest intermediate value reached by the stock between the time the plaintiff had information of the wrongful acts complained of, and a reasonable time thereafter to be allowed to plaintiff to place himself in the position he could have been in, had not his rights been violated.

"Now a reasonable time is such a period of time as would be a reasonable time in which to make a sale of stock held in joint account such as this; after one of the parties thereto makes a demand upon the other that the stock be sold, and in considering what would be a reasonable length of time, you must consider all the circumstances surrounding the case—not how quickly stocks could have been bought or sold, but what would be a reasonable length of time for him to wait before consenting to make sale of a joint account after demand had been made that he make a sale. A reasonable time would be the time which would elapse after notice to sell to the time when he could be legally required to make the sale."

Counsel for the appellee cite in support of the charge *Hubbell* v. *Blandy,* 87 Mich. 209; *Wright* v. *Bank of the Metropolis,* 110 N. Y. 237 (18 N. E. 79, 1 L. R. A. 289, 6 Am. St. Rep. 356) ; *Galigher* v. *Jones,* 129 U. S. 193 (9 Sup. Ct. 335) ; *Wilson* v. *Mining Co.,* 227 Fed. 720 (142 C. C. A. 245), and other cases. So far as these cases are applicable to the instant case, they do not sustain the charge of the court but are favorable to the contention of appellant. No case is cited by counsel on either side which is on all fours with the case we are now considering, but the principle involved was before this court in *Vos* v. *Child, Hulswit & Co.,* 171 Mich. 595 (43 L. R. A. [N. S.] 368), in an opinion written by Mr. Justice BIRD, who quotes with approval from the opinion of Mr. Justice Sanborn, in *McKinley* v. *Williams,* 74 Fed. 94 (20 C. C. A. 312), to the effect that though the general rule as to the measure of damages for failure to deliver ordinary personal property, according to a contract for purchase and sale, or for its conversion, is the value

of the property at the time it is to be delivered, or at the time it is converted (the act of conversion being on rightful demand wrongfully refused), nevertheless this general rule is subject to an exception in the case of shares of stock which are subject to frequent and wide fluctuations in value, and that the plaintiff should be permitted to recover the highest market value which the stock attains between the time of its conversion and the expiration of a reasonable time to enable the owner to put himself *in statu quo* after notice to him of the conversion. The case is so recent and so accessible that we content ourselves with this reference to it.

Counsel invoke section 28 of chapter 50 of Act No. 314, of the Public Acts of 1915, known as the judicature act (3 Comp. Laws 1915, § 13763), to sustain the judgment in this case upon the theory that no injustice has been done the defendant. If it is true, as claimed by the defendant, that plaintiff, by the expenditure of six or eight hundred dollars, within a reasonable time could have placed himself *in statu quo*, we do not think it can be said that a judgment in his favor of $3,500 is not an injustice.

For the reasons stated the judgment is reversed, with costs to the defendant, and a new trial ordered.

OSTRANDER, C. J., and BIRD, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.