### CLEMENTS et al. v. MUELLER.
### No. 6017.

Circuit Court of Appeals, Ninth Circuit.
May 19, 1930.

Sloan, Holton, McKesson & Scott, Cunningham & Carson, and Earl F. Drake, all of Phœnix, Ariz., for appellants.

F. C. Struckmeyer and I. A. Jennings, both of Phœnix, Ariz., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge.

This was an action for the recovery of damages for breach of a contract to resell corporate stock. The plaintiff had judgment below, and the defendants have appealed. Briefly stated, the complaint alleged that on August 29, 1924, the appellee was the owner of certain shares of the corporate stock of the Industrial Chemical Company, one of the appellants; that on that date the appellants, and each of them, charged the appellee with having secretly and wrongfully accepted commissions upon the sale of supplies and equipment to the chemical company and demanded that the appellee sell to the appellants all of the shares of stock of the chemical company then owned by him; that the appellee refused to sell or deliver such shares, but did agree to sell and deliver to the appellants 150 shares of the preferred and 375 shares of the common stock then owned by him, upon condition that such shares would be resold to him for the same consideration, upon proof submitted within a reasonable time that the charges so made were false and unfounded; that in consideration of the sale of such stock the appellants, and each of them, covenanted and agreed to resell and redeliver the stock to the appellee for the price paid, to wit, $15,000, within a reasonable time thereafter, and upon condition that the appellee would within such time submit evidence to them that he (the appellee) had not received a commission or commissions upon the sale of supplies and equipment to the chemical company; that within a reasonable time thereafter, and prior to April 23, 1925, the appellee did furnish conclusive evidence to the appellants, and each of them, that he had at no time received a commission or commissions upon the sale of supplies and equipment to the chemical company, and demanded of the appellants, and each of them, that they resell and redeliver the shares according to the terms of their agreement; that at numerous times since said time the appellee has demanded of appellants that they resell and redeliver said shares of stock to him, all of which demands have been by the appellants refused; that on April 18, 1927, the appellee made a legal tender to each of the appellants of the sum of $15,000, and demanded of them a delivery of the shares of stock, all of which was refused by each of the appellants; and that on April 23, 1925, and April 18, 1927, said shares of stock were and now are of the value of $27,-750.

The testimony on the part of the appellee tended to show that on August 29, 1924, he transferred by bill of sale to the appellant Spilsbury 150 shares of preferred and 375

shares of common stock of the chemical company for the consideration of $15,000, made up of $7,500 in cash and the return of a promissory note executed by the appellee in the same amount, and that on the same day an agreement was delivered to the appellee, containing the typewritten signature of the appellant Spilsbury, wherein Spilsbury and his associates agreed to resell the shares upon the same terms and conditions as purchased as soon as the appellee had cleared up the matters above referred to.

While numerous errors have been specified, the only question we deem it necessary to discuss or consider is the measure of damages adopted or applied by the court below, which was based on the value of the stock in April, 1927. As a general rule, the measure of damages for breach of contract for the sale of personal property is the difference between the contract price and the market value at the time and place of delivery. The rule is somewhat different, however, in the case of contracts for the sale of stocks and other properties of like character, the values of which are subject to frequent and wide fluctuations. The rule in the latter class of cases and the reasons therefor are well stated by Judge Sanborn in McKinley v. Williams (C. C. A.) 74 F. 94, 102:

"Compensation is the general standard for the measure of damages. It is the actual and proximate loss caused by the wrong for which the plaintiff is entitled to indemnity. Hence the general rule is that the measure of damages for the failure to deliver property according to the contract, or for its conversion, is the value of the property at the time it was to be delivered, or at the time it was converted. This general rule, however, has been found inadequate to furnish just indemnity for the losses occasioned by the conversion of, or the wrongful failure to deliver, stocks and other properties of like character, the values of which are subject to frequent and wide fluctuations. The general rule gives to the agent, broker, or person in possession of such property, that is really valuable, frequent opportunity to convert it to his own use, at a time when its market price is far below its actual value, and thus offers a prize for the breach of duty, while it often leaves the injured party remediless. To prevent this injustice, and to throw the chance of this loss upon him who inflicts, rather than upon him who suffers, the wrong, an exception has been ingrafted upon this general rule. It is founded upon the proposition that he who deprives another of the possession and control of such property ought to assume the risk of the fluctuations in its market value, until its owner, by purchase or sale, can restore himself to the condition in which he would have been if his property had not been wrongfully taken. It rests upon the proposition that the risk of the market during this time should be assumed by the perpetrator, not by the victim, of the wrong. The exception is that the measure of damages for the failure to sell or to deliver stocks and like speculative property, or for the conversion thereof, is the highest market value which the property attains between the time when the contract required its sale or delivery, or the time of its conversion, and the expiration of a reasonable time, to enable the owner to put himself in statu quo, after notice to him of the failure to comply with the contract, or of the conversion." To the same effect see Galigher v. Jones, 129 U. S. 193, 9 S. Ct. 335, 32 L. Ed. 658; Hoyt v. Fuller (C. C. A.) 104 F. 192; Wright v. Bank of the Metropolis, 110 N. Y. 237, 18 N. E. 79, 1 L. R. A. 289, 6 Am. St. Rep. 356; Vos v. Child, Hulswit & Co., 171 Mich. 595, 137 N. W. 209, 43 L. R. A. (N. S.) 368.

The appellee offered no testimony tending to prove the market value of the stock at any date earlier than April, 1927, some three and one-half years after the alleged contract of resale was entered into and two years after the breach alleged in the complaint. The appellants, on the other hand, offered testimony, which was not contradicted, tending to prove that the market value of the stock did not at any time exceed the contract price until the latter part of 1926, more than two years after the alleged contract was entered into and a year and a half after the breach alleged in the complaint. In other words, the uncontradicted testimony tends to prove that the appellee could have purchased stock of like character at less than the contract price at any time within a year and a half after the date of the alleged breach. That this was more than a reasonable time within which the appellee could have protected himself from loss by purchasing the stock elsewhere is manifest, and this as a matter of law. Wright v. Bank of the Metropolis, supra. This is especially true in view of the fact that the offer to resell was a mere option so far as the appellee was concerned and imposed no obligation whatever upon him until accepted.

The subject-matter of the resale was within the statute of frauds of the state, but in view of our conclusion on the question of damages it is perhaps unnecessary to consider which, if any, of the appellants was a party

to or bound by the contract of resale, if such a contract was in fact made.

The judgment is reversed, and the cause remanded for a new trial.