WILLIAM H. ALBERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74759.   Promulgated November 6, 1935.

*C. J. McGuire, Esq., W. C. Magathan, Esq.*, and *S. Lester McCormick, Esq.*, for the petitioner.

*F. D. Strader, Esq.*, and *F. S. Gettle, Esq.*, for the respondent.

OPINION.

MATTHEWS: The issues presented herein will be discussed in the inverse order in which they are set out above.

The respondent's disallowance of the deduction claimed by the petitioner on account of contributions made by him in the taxable year was predicated on the premise that such deduction should be limited to 15 percent of the ordinary net income, excluding capital net gains. This question of law has been decided adversely to the respondent's contention by the Supreme Court of the United States in *Helvering* v. *Bliss*, 293 U. S. 144, affirming 68 Fed. (2d) 890, and we accordingly hold in favor of the petitioner on this issue.

With respect to the sale by the petitioner to Alberly, Inc., of 11,800 shares of stock of the A. Nash Co., the respondent admits the apparent regularity thereof but argues that the sale was not a bona fide transaction made at arm's length. The petitioner was the president of Alberly, Inc., and owned 84 percent of its entire capital stock, the balance being owned by his wife and his brother. Petitioner frankly testified at the hearing that one of his motives for making this sale was to enable him to take a deduction from income for 1930. But the fact that the stock was transferred to the corporation which the petitioner controlled for the avowed purpose of reducing his income tax did not invalidate the transaction when the price received was equal to what could have been obtained from others. *Commissioner* v. *Hale*, 67 Fed. (2d) 561.

The petitioner herein is claiming a loss on the sale of stock of the A. Nash Co. in the amount of $668,234, representing the difference between the cost to him in 1929, when he bought the stock on the open market for $1,612,234, and the total sale price of $994,000. It is important to note that this stock was sold by the petitioner on December 31, 1930, at $80 per share, which price represented its fair market price on that date. The petitioner completely dispossessed himself of the stock. He did not receive any cash, but he did receive full and adequate consideration. An entry was made on the books of Alberly, Inc., crediting his account in the amount of $438,245, which wiped out petitioner's outstanding indebtedness to the corporation, and notes were executed by the corporation for the balance of the purchase price, which notes were given to the petitioner and substituted for his personal notes to secure loans previously obtained by him in the total amount of $505,000. The corporation's purchase of the stock was authorized by formal directorate action. The corporation has continued to own the stock and has pledged it as collateral against a loan to the corporation.

Under these circumstances we hold that the sale was bona fide and, inasmuch as the price received by the petitioner was neither more nor less than the fair market value of the stock at the time, we are of the opinion that the petitioner is entitled to the deduction claimed by him on this transaction.

A different situation is presented with respect to the sale of 18,652 shares of stock of the Kroger Grocery & Baking Co. These shares had been purchased by Alberly, Inc., in 1928 at a cost of $1,105,284.56, and since October 27, 1928, they had been held as collateral to secure the petitioner's personal trading account with Lehman Brothers. On May 2, 1930, Lehman Brothers sold these shares on the open market for the petitioner's account for $602,646.12. Petitioner maintains that he sustained a loss of $502,638.44, representing the difference between the sale price of $602,646.12 and $1,105,284.56, which was the cost of the stock to Alberly, Inc., it being the petitioner's position that he took over the stock on April 15, 1930, at the same figure at which the stock had been purchased by Alberly, Inc. In the alternative, it is claimed by the petitioner that he is entitled to a deduction of $143,433.88, representing the difference between the price at which the stock was sold and the fair market value thereof on April 15, 1930, which was $746,080.

We are of the opinion that the petitioner is not entitled to any deduction on account of this transaction and we sustain the respondent's action on this point. There is no evidence of any sale of this block of the Kroger stock to the petitioner. This stock was among the securities purchased by Alberly, Inc., in 1928, shortly after this company was organized by the petitioner, and was promptly loaned to the petitioner as " a considerable favor to him ", on condition that the stock would be returned " as soon as the loan had served its purpose." The petitioner pledged the stock as collateral security for his personal trading account. In April 1930, after the market had declined sharply and he was being pressed to liquidate his account with Lehman Brothers, the petitioner told his secretary that he would have to " take over " the stock which was owned by Alberly, Inc., in order to settle the claim of Lehman Brothers against him personally. The petitioner has taken April 15, 1930, as the date he made the decision to acquire this stock, and on that date the fair market value of the Kroger stock was approximately $40 per share. The petitioner testified that it was because he did not wish Alberly, Inc., to sustain a loss that he determined to pay $60 per share for the Kroger stock which he had borrowed from Alberly, Inc. It was admitted by the petitioner that he was under no obligation to buy this stock and that it was merely a personal feeling that he should assume the loss occasioned by the sale of this stock on the open market under date of May 2, 1930, when it brought only approximately $32.50 per share. The stock was never transferred to the petitioner on the books of the Kroger Grocery & Baking Co. No entry was made on the books of Alberly, Inc., with respect to the price at which this stock was taken over by petitioner until after the stock was sold by the brokers on

May 2, 1930. The entry was made as of April 15, 1930, and the price was listed at $60, though the stock was worth only $40 on that date. The petitioner testified that on any date from October 27, 1928, when he borrowed the stock from Alberly, Inc., until April 15, 1930, when he decided to take it over, he could have had appropriate entries made on the books to show that he was the owner of the stock. When the stock was loaned to the petitioner he became a gratuitous bailee and his only agreement was to return the stock. The sale of the stock for his personal account amounted to a conversion and the measure of damages therefor is the value of the stock at the time the conversion took place. 6 C. J. 1164; *Hubbell* v. *Blandy*, 87 Mich. 209; 49 N. W. 502. The stock having been sold in the open market on May 2, 1930, for $602,646.12, which amount represented its fair market value on that date, the petitioner was under obligation to turn over this sum to Alberly, Inc. There is nothing to show that Alberly, Inc., was entitled to a greater amount. Under these circumstances, we hold that the petitioner never purchased the Kroger stock from Alberly, Inc., and, since he did not owe the corporation any more than he received when the stock was sold, no loss was sustained by the petitioner on account of this sale. Cf. *Fremont C. Peck et al., Executors,* 31 B. T. A. 87; and *Frank Kell,* 31 B. T. A. 212.

*Judgment will be entered under Rule 50.*