62 F.3d 1418
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Priscilla M. PAYNE, on her own behalf and as attorney in
fact for Christine A. Payne and Jennifer S. Payne, and as
guardian and conservator for minors Gregory J. Payne,
Johnathan M. Payne, and Johanne M. Payne; Christine A.
Payne, Jennifer S. Payne, Gregory J. Payne, Johnathan M.
Payne, and Johanne M. Payne, Plaintiffs-Appellees,
v.
Richard M. WOOD, et al., Defendants,
Douglas B. Stalley, as personal representative of the Estate
of Richard M. Wood, Deceased, Defendant-Appellant.
 No. 94-1230.
 United States Court of Appeals, Sixth Circuit.
 Aug 2, 1995.
 
 Before: BOGGS and BATCHELDER, Circuit Judges; and ALDRICH, District Judge.*
 PER CURIAM.
 
 
 1
 Douglas Stalley, as personal representative of the Estate of Richard Wood, appeals a judgment against the estate for $3,760,909.49, representing damages of $2,860,395.41 and prejudgment interest of $900,541.08 awarded for the period from January 26, 1990 through the date of entry of judgment, June 9, 1993. He also appeals the district court's denial of his post-trial motions. We affirm the liability elements of the judgment, but find that damages were erroneously calculated. We reverse and remand this aspect of the verdict for further disposition in accordance with this opinion.
 
 
 2
 * Priscilla Payne is a wealthy heiress. Richard Wood was her attorney and financial adviser. Payne first met Wood in 1980. She retained Wood to be her attorney in her 1980 divorce and afterwards retained him to handle her estate planning matters.
 
 
 3
 Wood asked Payne to allow him to manage her investments. According to Payne, he orally promised her that he would invest in blue chip stocks, that she could get her money anytime, and that she would earn returns of at least 20 percent a year. Payne testified that in March 1982 she sold for about $2 million shares of Tenneco stock that she had inherited. She testified that after capital gains taxes, her proceeds were about $1.2 million, which she immediately gave to Wood to invest. She also gave Wood funds on behalf of her children that they received as beneficiaries of a trust. Payne stated that the funds forwarded on behalf of her children totalled $619,006 over the years Wood handled these investments. The record contains monthly statements for her account and for the accounts of her children from 1982 through October 1989. The record also contains statements from 1980-81 for Payne's account, indicating that she used Wood for investments before the sale of Tenneco stock in 1982. In addition, these statements indicate some growth in her holdings with Wood during 1982, but not to the extent of $1.2 million.
 
 
 4
 Payne testified that she first asked Wood verbally to return her investments, about six weeks before she sent him a letter repeating the request, dated October 1988. Wood did not return any money or stock. Payne retained an attorney, John MacNeal, who again requested that Wood return Payne's investments, or cash, in a letter dated April 7, 1989. Payne became concerned about her family's investments with Wood when an acquaintance sent her clippings from the Ann Arbor News that indicated other Wood investors could not get their assets from Wood. Another attorney, George Bearup, wrote a similar letter on Payne's behalf to Wood on December 21, 1989.
 
 
 5
 Payne filed her complaint against Wood on January 26, 1990, on her own behalf, as the attorney-in-fact for Christine Payne and Jennifer Payne, and as the guardian and conservator for Gregory Payne, Johnathan M. Payne and Johanne Payne, who are minors. Payne stated a federal claim under the federal Investment Advisers Act and supplemental Michigan law claims for breach of contract, professional malpractice, fiduciary duty, conversion, and unjust enrichment. After Richard Wood committed suicide in May 1990, Payne amended her complaint to name Douglas Stalley, personal representative for Wood's estate.
 
 
 6
 At trial, Payne testified that her family's accounts with Wood contained $1,523,429.82, as reflected on her last statement from Wood, dated October 18, 1989. Over Stalley's objection, Payne then testified that if that sum were increased by a 20 percent compounded annual rate of return from October to the day of trial, March 24, 1993, it would total $2,860,395.41.
 
 
 7
 Briggs Stahl, an accountant, testified that it was his opinion, after reviewing all available documents, that Payne transferred a total of $1,408,301.58 to Wood's Capital Investments Group, and that the total amount either returned to the Paynes or invested in stocks they still own was $1,033,990, leaving a unaccounted-for difference of $374,311.58. Stahl testified that he could not find any stock, cash or assets that belonged to Payne or were in her name.
 
 
 8
 Stahl also testified that Wood was operating a "form of" a pyramid scheme, because it appeared from the available financial records that Wood received money from new investors, then used some of it to pay off old investors and for personal expenses. Stahl testified that after examining Wood's records using first-in, first-out accounting methods, he determined that Wood had used some of Payne's funds to pay other investors, and some went to Wood's law firm.
 
 
 9
 The jury returned a verdict for Payne. On the special verdict forms, the jury indicated that it found that Wood: (1) violated the Investment Advisers Act, 15 U.S.C. Secs. 80b-6(1) and (2);[1] (2) breached an investor/adviser contract with Payne; (3) converted Payne's property,[2] but that Payne was not entitled to treble damages;[3] (4) committed malpractice; (5) breached his fiduciary duty, and; (6) obtained unjust enrichment.
 
 
 10
 The jury awarded Payne $2,860,395.41 as damages.[4] The jury calculated this amount as damages for Woods's violation of the Investor Advisers Act, breach of contract, malpractice, breach of fiduciary duty and unjust enrichment. This number duplicated exactly the damages calculation presented by Payne in her testimony and in her closing argument. In addition, the court awarded Payne prejudgment interest from January 26, 1990 to June 9, 1993, in the amount of $900,514.08, for a total judgment of $3,760,909.49.
 
 
 11
 Stalley filed a motion for judgment as a matter of law and/or for a new trial on July 9, 1993. He argued that the evidence was insufficient to support the jury's verdict, that the court erred in several evidentiary decisions, and erred by refusing to give his proposed instruction on prejudgment interest and usury. Stalley also argued that the damages were contrary to the jury instructions and excessive. The district court denied Stalley's motion, holding that the record was sufficient to support the verdict. The court also found that the jury included a 20 percent return in its verdict as damages, not as interest. The court rejected Stalley's arguments that its award of prejudgment interest, in addition to the jury's inclusion of a 20 percent return to the date of judgment as damages, was "double-counting."
 
 
 12
 Stalley argued that under Michigan law the proper method to value a breach of contract for failure to purchase or deliver stock was to determine the highest value of the stock within a reasonable time after the breach, and not by giving Payne her money back plus a 20 percent annual return compounded indefinitely. Stalley noted that Payne failed to produce evidence to substantiate such damages. The court rejected this argument as well, determining that, based on the evidence produced at trial:
 
 
 13
 Wood maintained possession of the Plaintiff's stocks, which bore a value of $1,540,187.50, as late as October 1989 ... in conjunction with an annual rate of return for the years during which Wood acted as an investment advisor, [this evidence] could have led the jury to conclude that the Plaintiffs suffered damages which approximated nearly three million dollars.
 
 
 14
 Order at 19.
 
 
 15
 On appeal, Stalley once again argues that Payne presented insufficient evidence for a jury to find that Wood breached a contract with Payne. He also claims that the court committed reversible error by admitting Payne's testimony regarding Wood's contracts with other investors. He argues that the court also erred by submitting Jury Instructions 53, on unjust enrichment, and 71, on the calculation of damages for a violation of the Investment Advisers Act, and by rejecting Wood's prejudgment interest "instruction." He also argues that the damages award was excessive, and that the court erroneously awarded prejudgment interest in addition to the damages award, in which the jury had included a 20 percent "return."
 
 II
 
 16
 First, we consider whether the evidence at trial was sufficient to find a contract between Payne and Wood. The contract law aspects of Payne's claim require the court to apply Michigan law. The standard of review of a jury verdict of a claim arising under Michigan law is that if reasonable people could differ as to the meaning of the evidence when the facts are viewed in a light most favorable to the prevailing party, the evidence is sufficient to support the verdict. Wiskotoni v. Michigan Nat'l Bank-West, 716 F.2d 378, 383 (6th Cir.1983) (citing Birou v. Thompson-Brown Co., 241 N.W.2d 265, 269 (Mich.App.1976)).
 
 
 17
 Our review of the record indicates that Payne testified that Wood did not say that she would receive a particular return each year, but that the return would be at least 20 percent. Furthermore, evidence produced at trial indicated that he promised her more than just this. Payne also testified that Wood promised to make her a multimillionaire, invest her money in blue-chip stocks, and provide her with access to her capital at any time. She admitted she had nothing in writing to confirm any of these promises.[5]
 
 
 18
 The district court properly concluded that Payne produced sufficient evidence for a reasonable jury to find for her on the breach of contract claim. Payne's testimony could support a finding that Wood indeed promised a number of things, including guaranteeing a return of at least 20 percent, investing her money in blue-chip stocks, and providing her access to her assets. The evidence shows that these other terms, which are quite definite and could not be construed as statements of opinion, were also breached. Therefore, we reject Stalley's argument on appeal that insufficient evidence supports the jury's verdict for liability on the breach of contract element of Payne's claim.
 
 III
 
 19
 Second, we examine whether Payne's testimony regarding Wood's transactions with other investors was admissible. "[T]he admission of relevant potentially prejudicial evidence is placed within the sound discretion of the trial court.... If in the discretion of the court the probative value of the evidence is substantially outweighed by its prejudicial character, the evidence is inadmissible." United States v. Zipkin, 729 F.2d 384, 389-90 (6th Cir.1984). We review a trial court's rulings on the admissibility of evidence for abuse of discretion. Cathey v. Johns-Manville Sales Corp., 776 F.2d 1565 (6th Cir.1985), cert. denied, 478 U.S. 1021 (1986). When a party fails to object at trial, we will review for plain error. United States v. Hughes, 895 F.2d 1135, 1144 (6th Cir.1990).
 
 
 20
 Stalley argues that the court erred by allowing Payne to testify about her past volunteer work, the information she read in the paper about Wood's problems with other investors, her communications with other agencies investigating Wood, and the changes she had to make in her lifestyle in light of her financial losses. Stalley claims that this evidence was irrelevant and highly prejudicial, and was not admissible under Fed.R.Evid 401, 402 and 403.[6] Stalley made contemporaneous objections to each piece of evidence.
 
 
 21
 Payne responds that the evidence about what she had read in the newspaper and her contacts with investigators was relevant to show that Payne had discovered Wood's activities within the statute of limitations, which Stalley raised as a defense. Payne argues that evidence of her lifestyle changes were relevant to demonstrate the full damages she had suffered from Wood's professional malpractice. See Law Offices of Lawrence J. Stockler, P.C. v. Rose, 436 N.W.2d 70, 81 (Mich.App.1989), appeal denied, 434 Mich. 862 (1990).
 
 
 22
 We find that the court below did not abuse its discretion by allowing this testimony. The questions about Payne's volunteer work were part of a line of questions at the outset of Payne's direct examination, which included questions about her personal history. The answers to these questions would be relevant to establish Payne's level of sophistication, which could be an issue in the breach of contract claim. Even if not very probative, it is hard to imagine what prejudice Wood suffered by the admission of this evidence.
 
 
 23
 Payne's testimony about what she read in the paper and her contacts with investigators would appear relevant to support a conclusion as to when she discovered Wood's improprieties, and this fact is relevant to when the statute of limitations should begin to run. The court limited her testimony to identifying when she had read the article and when she spoke with investigators, and did not allow her to repeat the content of the article or the conversations. Finally, the court did not abuse its discretion by allowing Payne to testify about the changes she made in her lifestyle. This evidence was relevant to demonstrate her damages. Therefore, we hold that the trial court in this case did not abuse its discretion by allowing any of these items in as evidence.
 
 IV
 
 24
 We now consider whether the trial court erred by submitting Jury Instructions 53 and 71, and rejecting Stalley's proposed instruction on prejudgment interest.
 
 
 25
 We review jury instructions to determine if the instructions, taken as a whole, fairly and adequately submitted the issues to the jury. O-So Detroit, Inc. v. Home Ins. Co., 973 F.2d 498, 502 (6th Cir.1992); Cincinnati Fluid Power, Inc. v. Rexnord, Inc., 797 F.2d 1386 (6th Cir.1986).
 
 
 26
 First, Stalley argues that Instruction 53, regarding unjust enrichment, was improperly submitted to the jury because unjust enrichment is an equitable claim, citing Dean v. Michigan Department of Natural Resources, 247 N.W.2d 876 (Mich.1976). Stalley additionally argues that the jury should have been instructed to find that Payne could only receive relief under an unjust enrichment theory if Payne had shown that she lacked an adequate remedy at law. Stalley made essentially this same argument in his objection to the jury instructions at trial.
 
 
 27
 Second, Stalley argues that Instruction 71 improperly stated the standard for recovery under the Investment Advisers Act. Stalley insists that a plaintiff who prevails under the Act can only recover management fees. Transamerica Mortgage Advisors v. Lewis, 444 U.S. 11 (1979); see also Defendant's Proposed Jury Instruction No. 38.
 
 
 28
 Third, Stalley argues that the court should have given an instruction on prejudgment interest. Stalley states in his brief that the court erred by not adopting his instruction, and instead giving a different instruction to which he objected.[7] All three of these issues were raised in Stalley's motion for a new trial, and the district court rejected each one.
 
 
 29
 We affirm the district court's rejection of these three arguments. "Even though no contract may exist between two parties, under the equitable doctrine of unjust enrichment, 'a person who has been unjustly enriched at the expense of another is required to make restitution to the other.' " Kammer Asphalt Paving Co. v. East China Township Sch., 504 N.W.2d 635, 640 (Mich.1993) (quoting Restatement of Restitution Sec. 1 at 12). It is not error for an unjust enrichment claim to be submitted to a jury as an alternative theory of recovery. See B & M Die Co. v. Ford Motor Co., 421 N.W.2d 620, 622-23 (Mich.App.1988).
 
 
 30
 The district court was also correct to reject Stalley's claim that the jury instruction for the remedy under the Investment Advisers Act was erroneous. The Act provides a limited private right of action at 15 U.S.C. Sec. 80b-15, which declares that "[e]very contract made in violation of any provision of this subchapter ... shall be void...." The Supreme Court construed this language to provide a private party that proves a violation of the Investment Advisers Act with the power to seek rescission and obtain restitution of any consideration paid under the contract. Transamerica, 444 U.S. at 18. "Restitution of any consideration paid" may in some cases be the same as the amount paid in management fees, but under the facts of this case restitution would also include money given to Wood to invest. Therefore, Wood's suggested instruction was incorrect, and the court did not err by instructing the jury as it did.
 
 
 31
 The district court also properly instructed the jury regarding prejudgment interest. As Stalley acknowledges, the court did instruct the jury not to be concerned with attempting to calculate prejudgment interest. We find that the district court committed no error regarding these instructions.
 
 V
 
 32
 We next determine whether the damages awarded were excessive, contrary to the great weight of the evidence, or erroneous as a matter of law.
 
 
 33
 Whether damages were adequately proven is a question of law reviewable by an appellate court. American Casualty Co. v. City of Detroit, 851 F.2d 794 (6th Cir.1988). Whether the damages awarded are excessive is a question reviewed to determine if the verdict is shocking or manifests plain injustice. Rodgers v. Fischer Body Division, GMC, 739 F.2d 1102 (6th Cir.1984), cert. denied, 470 U.S. 1054 (1985).
 
 
 34
 Stalley states on appeal that Payne failed to prove her damages as required under Michigan law, citing Butterfield v. Metal Flow Corp., 462 N.W.2d 815 (1990). Although the rule of Butterfield does appear to be the proper rule to apply, we must consider first whether Stalley has waived this argument by failing to raise it in a timely fashion.
 
 
 35
 Stalley objected to the damages instruction for Payne's Investment Advisers Act claim, but did not object to the general instruction on how to calculate compensatory damages. In fact, in Stalley's Proposed Jury Instructions, his proposed Instruction 36 contains language similar to Instruction 72, which was given to the jury.[8] However, Stalley raised the issue of whether the jury had been properly instructed on how to calculate Payne's compensatory damages in his motion for Judgment as a Matter of Law and/or for a New Trial. Failure to make timely objections to an instruction will waive the error, "except where there is 'plain error.' " Chonich v. Wayne County Community College, 973 F.2d 1271, 1275 (6th Cir.1992); see also Libbey-Owens-Ford Co. v. Insurance Co. of North America, 9 F.3d 422, 427 (6th Cir.1993); Batesole v. Stratford, 505 F.2d 804, 808 (6th Cir.1974); Fed.R.Civ.P. 51.
 
 
 36
 Each of Payne's theories of liability appears to depend for damages on her loss of her investments. Her testimony, which proved so persuasive to the jury, that she had suffered damages of $2,860,395.41, was offered to demonstrate her damages in general. She did not specify that her calculation was relevant to one theory of recovery or another. Apart from her brief statement that she had changed her lifestyle, she did not provide evidence to support an awarding of additional tort-type damages for, e.g., pain and suffering. We therefore believe that any error in the court's instructions regarding the valuation of the loss of her stocks would render erroneous the damages verdict for each of Payne's claims. As explained below, we find that the court did not properly instruct the jury on how to value Payne's compensatory damages, and that the jury was not provided with the evidence necessary to set these damages.
 
 
 37
 The general rule for valuation of Payne's damages would be to determine the value of the stock at the time of the breach. Feige v. Burt, 83 N.W. 367 (Mich.1900); McDonald v. McKinnon, 62 N.W. 560 (Mich.1895). However, this rule is often inadequate to compensate investors fully for damages involving stocks, because stocks may fluctuate dramatically in value. Therefore, under longstanding Michigan law, in a claim for damages arising from a breach of contract to sell, purchase, or deliver stock, the stock is valued at " 'the highest market value which [it] ... attains between the time when the contract required its sale or delivery, or the time of its conversion, and the expiration of a reasonable time, to enable the owner to put himself in statu quo, after notice to him of the failure to comply with the contract or of the conversion.' " Vos v. Child, Hulswit & Co., 137 N.W. 209, 210 (Mich.1912) (quoting McKinley v. Williams, 74 F. 94, 103 (8th Cir.1896)), cited in Butterfield v. Metal Flow Corp., 462 N.W.2d 815, 819 (Mich.App.1990) (applying Vos rule to stock of closely held corporation); see also Holland Furnace Co. v. Allen, 118 F.2d 969, 973 (6th Cir.1941) (applying Michigan law); Weaver v. Commercial Savings Bank, 192 N.W. 578, 579 (Mich.1923); Wallace v. H.W. Noble & Co., 168 N.W. 984, 986 (Mich.1918).
 
 
 38
 This rule, referred to in a number of cases as the "New York Rule," is designed to remedy the injured party's damages as nearly as possible, while providing that party with an incentive to minimize damages. See Galigher v. Jones, 129 U.S. 193, 201 (1889) (adopting "New York Rule" as federal rule); Gervis v. Kay, 144 A. 529, 530-31 (Pa.1928) (applying "New York Rule" to Pennsylvania case). The rule attempts to provide a fair valuation for stocks, by allocating the risk of market fluctuation to the breaching party. "The risk of the market during this time should be assumed by the perpetrator, not by the victim, of the wrong." Clements v. Mueller, 41 F.2d 41 (9th Cir.1930) (applying Galigher ).
 
 
 39
 The injured party need not actually replace the lost stock in order to benefit from this remedy. Schultz v. Commodity Futures Trading Comm'n, 716 F.2d 136, 140 (2d Cir.1983); Gervis, 114 A. at 531. Unless the facts are undisputed or not subject to conflicting inferences, the question of what is a reasonable time is one for the jury. Vos, 137 N.W. at 210.
 
 
 40
 We find that the district court did not properly instruct the jury on the method by which they should calculate Payne's damages. We note that at oral argument, counsel for both Payne and Stalley appeared to concede the validity of the monthly statements provided Payne by Wood. The October 1989 statement lists the stocks in Payne's portfolio. We find that the facts are therefore undisputed regarding the contents of the portfolio Wood ostensibly managed for Payne.
 
 
 41
 We also find no factual dispute over when Payne was notified that Wood had violated their agreement. The record contains her correspondence to him, in which over the course of some 14 months she pleads for him to transfer her portfolio to another investment adviser. In Payne's October 25, 1988 letter to Wood, she asked him to transfer her portfolio. On November 4 she wrote Wood again, asking about a check for $30,000 she had yet to receive. In a letter dated November 30, 1988 she again inquires about the transfer. In a letter dated January 23, 1989, Payne expresses her dismay that Wood had asked to meet with her, and has not yet transferred the investments. On April 7, 1989, attorney John MacNeal wrote to Wood on Payne's behalf, seeking transfer of the investments. On May 23, 1989, Payne wrote Wood again, to memorialize the contents of a conversation between them, in which she stated that Wood agreed to transfer her investments to another adviser "if [Payne] decided to remove [her] investments from Capital Investment Group" and that transfer would take about six weeks. If she decided to keep her investments with Wood, he promised Payne he would prepare signed monthly financial statements. On July 11, 1989, Wood wrote Payne, detailing "the mechanics of Capital Investment Group" and stating that Payne should at that time have begun receiving signed monthly statements as she had requested. On December 11, 1989, Payne again wrote Wood to memorialize the contents of another two phone calls, one on September 22, in which Payne had asked Wood to transfer her stock to a broker in Chicago, and on November 16, in which Wood had told Payne that he stopped the transfer "because of a significant drop in the market and had decided to watch the stock market for thirty days to make sure it had stabilized before continuing the transfer." On December 18, Wood wrote Payne, requesting a letter relieving him of his fiduciary obligations with respect to Payne's investments and those of her children, to protect him from liability if the value of these investments fell during transfer. He promised to produce a timetable for the transfer of Payne's investments. On December 21, 1989, attorney George Bearup wrote Wood on Payne's behalf, relieving him of "financial responsibility resulting from the timing of your transfer of securities and investments pursuant to Ms. Payne's previous verbal direction."
 
 
 42
 In cases applying the New York Rule to determine stock valuation, the issue of what is a "reasonable time" in which to set the value turns on the facts of each case. In this case, we believe that, while Payne was on notice that Wood was not responsive to her requests, she apparently continued to receive promises from him that he would perform for her by transferring the investments. The record does not indicate that Payne attempted to enhance her damages through delay, but rather that she continued to pursue Wood because she expected him to deliver. Therefore, we find that she was only on notice of his failure to deliver her stocks once he failed to transfer her investments after the Bearup letter formally insulated him from liability for a decrease in stock prices during transfer, on December 21, 1989. We certainly believe that a reasonable time after this notice would extend to the date she filed her complaint, January 26, 1990.
 
 
 43
 However, the record's last reference to the value of Payne's portfolio and the portfolio's of her children is Wood's October 18, 1989 investment report, J.A. 644-653. The record does not contain information to demonstrate what the highest price of these investments would be within the reasonable time that we have defined. Without this information, we are not able to calculate her compensatory damages. As we stated before, each of Payne's claims depends on a proper calculation of Payne's damages for Wood's failure to deliver her stocks, since this is the bad conduct that forms the factual basis for each theory of liability, and the damages element for which Payne supplied proof at trial. We find that the court provided an incorrect instruction to the jury. We note that the jury appeared to be confused in any case, given that it awarded the same amount as damages for Payne's Investment Advisers Act and unjust enrichment claims, which are limited to a restitutionary remedy, as it did for her malpractice, breach of fiduciary duty, and breach of contract claims, which are not so limited. We therefore believe that it is in the interest of justice that a new jury revisit the evidence, and, properly instructed, reach a new verdict. We remand for a new trial on damages.
 
 VI
 
 44
 Finally, we must determine whether the trial court erred by awarding Payne prejudgment interest. Matters of prejudgment interest are governed by state law. Clissold v. St. Louis-San Francisco Ry. Co., 600 F.2d 35, 38-39 (6th Cir.1979).
 
 
 45
 Mich.Comp.Laws Sec. 600.6013 authorizes the payment of interest on all money judgments awarded in "civil actions." The purpose of interest is to compensate the prevailing party for delay in recovering money damages. Rittenhouse v. Erhart, 380 N.W.2d 440, 450 (Mich.1985); Farmers Ins. Group v. Lynch, 465 N.W.2d 21, 22 (Mich.App.1990). The court should award prejudgment interest after the jury renders its verdict. Vannoy v. City of Warren, 182 N.W.2d 65, 69 (Mich.App.1970), aff'd, 386 Mich. 686 (1972). Under Michigan law, interest on a judgment should be awarded from the date of the filing of the complaint to the date the judgment is satisfied. Mich.Comp.Laws Sec. 600.6013(6). In this case, interest should run from the date Payne first served Wood, rather than the later date when she substituted Stalley. See Miszewski v. Knauf Constr., Inc., 454 N.W.2d 253, 255 (Mich.App.1990).
 
 
 46
 Stalley claims that the court provided Payne with double recovery by awarding her prejudgment interest, when the jury's damages verdict included "interest" from the date of the filing of the complaint to the date of judgment. We agree, and we note that once damages are correctly assessed, that recalculated interest should be awarded from the date of the filing of the complaint to the date the judgment is satisfied.
 
 VII
 
 47
 In conclusion, Wood's claims that Payne produced insufficient evidence to warrant the jury's verdict on her breach of contract claim should fail. Similarly, Wood's arguments regarding the admissibility of Payne's testimony and the court's instructions to the jury do not warrant a new trial. However, the jury was not properly instructed on how to calculate Payne's damages, and this error requires a new trial. Therefore, we AFFIRM the district court's judgment as to liability, but we VACATE its award of damages, and REMAND for a new trial on damages.
 
 
 48
 BATCHELDER, Circuit Judge, concurring.
 
 
 49
 I concur with much of the reasoning in this opinion and with its result. I write separately only to express my reluctance to agree entirely with the majority's finding that the district court committed plain error in failing to instruct the jury on the proper measure of damages for a claim of failure to deliver stock. I agree, that the district court should have given this instruction due to the nature of the plaintiff's claims and proof. Given the confusing nature of this case, however, I hesitate to label the district court's conduct plain error. From the evidence, the jury plausibly could have found that Wood never actually purchased any stock in the plaintiff's name and, therefore, no stock existed for Wood to deliver. Because I cannot come up with a better solution and because the majority was correct in all other respects, I concur.
 
 
 
 *
 The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 15 U.S.C. Secs. 80b-6(1) and (2) read:
 It shall be unlawful for any investment adviser, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly--
 (1) to employ any device; scheme, or artifice to defraud any client or prospective client;
 (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client.
 
 
 [2]
 The jury was instructed to find conversion if Payne proved: (1) that she and her children were the owners of personal property and entitled to its immediate possession; (2) Wood exerted dominion over the property, wrongfully and inconsistent with their interest in the property; and (3) she and her children had been damaged as the result of Wood's actions. Instruction 42
 
 
 [3]
 The court instructed the jury that the Paynes would be entitled to treble damages if the jury found that Wood bought, received or aided in the concealment of stolen, converted or embezzled personal property of the Paynes. Instruction 74
 
 
 [4]
 On damages, the court instructed the jury to award only such damages that would reasonably compensate Payne and her children for their losses. Instruction 69. The court instructed the jury that if it found Wood violated the Investment Advisers Act, the jury must order a rescission of the contract and determine restitution of the consideration paid. Instruction 71. Wood objected to this instruction at trial, arguing that Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11 (1979) only allowed recovery of management fees for violations of the Investor Advisers Act
 In Instruction 73, the court told the jury to set Payne's damages for conversion at the market value of the converted property at the time of the conversion. The jury set the value of the converted property at issue in the conversion action at $2 million.
 The court also instructed the jury that it could award exemplary damages if it found that actual damages would not provide full compensation for humiliation, outrage and indignities suffered by the Paynes. Instruction 75. However, the special verdict form did not include an entry for exemplary damages.
 
 
 [5]
 Michigan no longer has a dead man's statute that would otherwise prevent Payne from testifying about Wood's statements. In re Backofen Estate, 404 N.W.2d 675 (Mich.App.1987)
 
 
 [6]
 Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable...."
 Rule 402 states that relevant evidence is generally admissible.
 Rule 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...."
 
 
 [7]
 During Stalley's motion for judgment as a matter of law, he requested that the court limit any interest "to statutory interest from the date of filing the complaint." This attack was directed at Payne's claim for a 20 percent return on her capital. Stalley reiterated this argument in his objection to the jury instructions, as his proposal for an instruction on interest, which the court did not adopt
 Instead, the judge stated at the beginning of the jury instructions: "I should point out to you that there was some reference to statutory interest. That is not an issue that you must consider in your evaluation of the merits...."
 
 
 [8]
 Stalley's Proposed Jury Instruction 36 read in pertinent part:
 Damages for breach of contract, or breach of fiduciary duty, are limited to those which are direct and proximate consequence [sic] of the breach and which were within the contemplation of the parties at the time...."
 Jury Instruction 72 read:
 If you decide that the Plaintiffs are entitled to damages for a breach of contract, it is your duty to determine the amount of money which reasonably, fairly and adequately compensates them for the direct and proximate consequence of the breach.